723 F.2d 1077
 SULLIVAN, John
v.
CUYLER, Julius T., Superintendent, Graterford State
Correctional Institution and District Attorney of
Philadelphia County.
Appeal of Julius T. CUYLER and the District Attorney of
Philadelphia County.
SULLIVAN, John
v.
CUYLER, Julius T., Superintendent, Graterford State
Correctional Institution and District Attorney of
Philadelphia County
Appeal of John SULLIVAN.
 Nos. 82-1829, 83-1040.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 1, 1983.
Decided Dec. 8, 1983.
Rehearing and Rehearing In Banc Denied Jan. 12, 1984.
 
 Kenneth S. Gallant (argued), Michael Clarke, Leslie Anne Sudock, Asst. Dist. Attys., Eric B. Henson, Deputy Dist. Atty., Edward G. Rendell, Dist. Atty. of Philadelphia, Philadelphia, Pa., for appellants, cross-appellees, Cuyler, et al.
 Marilyn J. Gelb (argued), Jeremy C. Gelb, Philadelphia, Pa., for appellee, cross-appellant, Sullivan.
 Before ALDISERT, HUNTER and WEIS, Circuit Judges.OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 Two primary questions are presented by this appeal and cross appeal from the district court's conditional grant of a state prisoner's petition for writ of habeas corpus: (1) whether there was sufficient evidence to support petitioner's conviction for first degree murder; and (2) whether representation by two attorneys of both the petitioner and his co-defendants created a conflict of interest violative of petitioner's sixth amendment right to effective assistance of counsel. We agree with the district court that a writ of habeas corpus should issue because even though there was sufficient evidence to support petitioner's conviction, there was proof that an actual conflict of interest adversely affected his attorneys' performance. We affirm the district court on that basis.
 I.
 Appellant John Sullivan was indicted with Gregory Carchidi and Anthony DiPasquale for the first degree murders of John Gorey and Rita Janda. The victims, a labor union official and his companion, were fatally shot in Gorey's second floor office at the Philadelphia headquarters of Teamsters' Local 107. Sullivan was the first defendant to come to trial. The evidence against him was entirely circumstantial, consisting primarily of the testimony of Francis McGrath--a janitor at the union hall where the bodies were discovered. McGrath testified: (1) that when he came to work on the evening of June 17, 1966, he saw Sullivan's car parked next to DiPasquale's in the lot adjacent to the union hall; (2) that he saw Sullivan at the window of a second floor conference room normally used by other union officials; (3) that after he entered the hall, Sullivan told him to leave, but he ignored the suggestion; (4) that he saw Gorey and Janda enter the building, at which time Sullivan again urged him to leave, but he again refused; (5) that Carchidi, another janitor on duty that night, also urged him to leave; (6) that shortly after these warnings, he heard sounds like firecrackers going off in rapid succession, and Carchidi told him, not in the presence of Sullivan, to "Get out of the building and don't say nothing," whereupon McGrath left the building; and (7) that when he left, cars belonging to DiPasquale, Gorey, Carchidi, and Sullivan were in the lot, but that when he returned fifteen minutes later, only Gorey's car remained, and he found the offices closed, the conference room locked, and the lights out in the union hall. The bodies of Gorey and Janda were discovered the next morning, shot four and six times respectively. Evidence established the time of death to be about 7:15 p.m. on June 17, 1966, or about the time McGrath heard the firecracker-like sounds.[1]
 At the close of the Commonwealth's case, the defense rested. The decision not to present evidence was made jointly by Sullivan and his attorneys, G. Fred DiBona and A. Charles Peruto, who also represented Carchidi and DiPasquale throughout the state proceedings following their indictments. The jury found Sullivan guilty and fixed his penalty at life imprisonment. Sullivan's post-trial motions were denied, and an equally divided court affirmed his conviction. Commonwealth v. Sullivan, 446 Pa. 419, 286 A.2d 898 (1971). After obtaining new counsel, Sullivan twice sought reconsideration of that decision, and both applications were denied. See Commonwealth v. Sullivan, 472 Pa. 129, 180, 371 A.2d 468, 492 (1977) (Pomeroy, J., concurring and dissenting).
 
 
 1
 Sullivan then sought collateral relief under the Pennsylvania Post-Conviction Hearing Act, 42 Pa.Cons.Stat.Ann. Secs. 9541-9551 (Purdon 1982), alleging, inter alia, that (1) the admission into evidence at trial of color slides of the victims' bodies violated his constitutional right to due process; (2) there was insufficient evidence to support his conviction; and (3) his defense attorneys had a conflict of interest that denied him his sixth amendment right to effective assistance of counsel. In five days of evidentiary hearings, the trial court took testimony from Sullivan, Carchidi, DiBona, and Peruto. It then held that Sullivan could take a second direct appeal because counsel had not assisted him adequately in the preparation of his first appeal. The court did not pass directly on the claim that defense counsel had a conflict of interest. It specifically reserved Sullivan's claim regarding the admission of color slides into evidence for consideration in the new appeal.
 
 
 2
 The Pennsylvania Supreme Court denied collateral relief and thereby re-affirmed Sullivan's original conviction. Commonwealth v. Sullivan, 472 Pa. 129, 371 A.2d 468 (1977). It found, inter alia, that: (1) the state trial court did not abuse its discretion in admitting the color slides into evidence; (2) Sullivan's conviction was supported by sufficient evidence; and (3) there was no multiple representation necessary to prove a conflict of interest because DiBona represented Sullivan and Peruto represented Carchidi and DiPasquale. It supported its conflict of interest determination by crediting DiBona's testimony at the post-conviction hearing that "his stewardship was in no way affected by the consideration of the co-defendant's cases but was solely a product of what he considered to be the best course in his representation of Sullivan." 472 Pa. at 161, 371 A.2d at 483.
 
 
 3
 Sullivan next brought a petition under 28 U.S.C. Sec. 2254 for federal habeas corpus relief in district court, raising the same claims that we noted he raised in his state court petition for post-conviction relief. The habeas petition was referred to a magistrate who rejected most of Sullivan's claims but found that defense counsel had represented conflicting interests. The district court accepted all of the magistrate's recommendations except his conflict of interest determination. Sullivan v. Cuyler, Civ. No. 77-2527 (E.D.Pa. Feb. 2, 1978). It chose instead to accept the Pennsylvania Supreme Court's conclusion that there had been no multiple representation.
 
 
 4
 On appeal, addressing only the conflict of interest issue, we held that there was sufficient involvement by both attorneys in the trials of each co-defendant to constitute multiple representation as a matter of law and that the existence of at least a possibility of a conflict of interest therefrom was sufficient to constitute a violation of petitioner's sixth amendment right to effective assistance of counsel. United States ex rel. Sullivan v. Cuyler, 593 F.2d 512 (3d Cir.1979). The Supreme Court reversed. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). It agreed with us that DiBona and Peruto represented all three defendants, but determined that a showing of only a potential conflict of interest therefrom was insufficient to taint a criminal conviction. The Court required a defendant to demonstrate that "an actual conflict of interest adversely affected his lawyer's performance" before a violation of the sixth amendment could be established. Id. at 348, 100 S.Ct. at 1718. The Court remanded the cause to us, and we in turn remanded it to the district court, directing it to consider first the sufficiency of evidence question under the new standard formulated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and to issue the writ without further inquiry into the remaining grounds of the petition if it concluded that the evidence was insufficient to support Sullivan's conviction. United States ex rel. Cuyler v. Sullivan, 631 F.2d 14 (3d Cir.1980). We further instructed that if the conflict of interest issue had to be reached, the district court should "reexamine its finding of no actual conflict with a certainty of knowledge of the existence of 'dual representation' and with the benefit of the Supreme Court's pronouncements in Cuyler v. Sullivan...." Id. at 17.
 
 
 5
 On remand, the district court again referred the case to a magistrate, who concluded that, based on the facts found by the Pennsylvania Supreme Court, there was sufficient evidence under Jackson to support Sullivan's conviction. The magistrate then addressed the conflict of interest question. He conducted an evidentiary hearing on the issue because he found the state court record deficient. Based primarily on testimony by Peruto concerning counsel's decision to rest Sullivan's defense without allowing Carchidi to testify, the magistrate found that there was sufficient evidence of an actual conflict of interest that adversely affected counsel's performance to justify issuance of the writ.
 
 
 6
 The district court, after consideration of the parties' objections, adopted the magistrate's findings and granted Sullivan's petition for writ of habeas corpus. It then stayed execution of the writ for sixty days to allow the Commonwealth to either appeal or relist the case for trial. United States ex rel. Sullivan v. Cuyler, 553 F.Supp. 1236 (E.D.Pa.1982). The Commonwealth appealed, and Sullivan cross appealed.
 
 II.
 
 7
 The Commonwealth, at No. 82-1829, argues that the district court (1) erred in ordering an evidentiary hearing on the issue of conflict of interest because it was bound by the facts found by the state courts in post-conviction review; (2) violated 28 U.S.C. Sec. 636(b)(1) and article III of the Constitution by delegating the conduct of that hearing to a magistrate; (3) violated 28 U.S.C. Sec. 636(b)(1) by failing to make a true de novo review of the record in deciding the merits of the parties' objections to the magistrate's recommendation; and (4) erred in finding evidence of actual conflict of interest that adversely affected counsel's performance sufficient to justify awarding petitioner habeas relief for a violation of his sixth amendment right to effective assistance of counsel.
 
 
 8
 In his cross appeal, at No. 83-1040, Sullivan contends that the district court both improperly relied on an augmented trial record and misapplied Jackson to conclude that there was sufficient evidence to support his conviction. He further argues that the district court violated his fundamental constitutional right to a fair trial by admitting into evidence color slides of the victims' bodies. The Commonwealth counters that because Sullivan failed to raise this latter claim, in its constitutional posture, in state court, his entire petition must be dismissed under Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).
 
 
 9
 Two standards of review govern our consideration of these contentions. Our review of the Commonwealth's contention that the district court's finding of actual conflict of interest is error is subject to the clearly erroneous standard. Krasnov v. Dinan, 465 F.2d 1298 (3d Cir.1972). Our review of the remaining contentions, which implicate the interpretation and application of legal precepts, is plenary. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981).
 
 
 10
 We begin by addressing the exhaustion issue.
 
 III.
 
 11
 A habeas corpus petition must be dismissed if it contains both exhausted and unexhausted claims. Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). A claim is exhausted if it was "fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). It need not have been decided by the state courts on the merits. Houston v. Estelle, 569 F.2d 372, 375 (5th Cir.1978).
 
 
 12
 Sullivan's habeas petition claims that the color slides of the victims' bodies admitted into evidence by the state trial court were highly prejudicial and inflammatory and violated his fundamental right to due process. The Commonwealth argues that because Sullivan never presented this claim to the state courts in federal constitutional terms, the claim has not been exhausted and, therefore, the entire habeas petition must be dismissed under Rose v. Lundy. We disagree.
 
 
 13
 Sullivan presented his constitutional argument to the state courts in his amended petition under Pennsylvania's Post-Conviction Hearing Act. That petition alleged that:
 
 
 14
 Petitioner is eligible for relief under the Post-Conviction Hearing Act because the Commonwealth was permitted to introduce photographs whose essential evidentiary value was outweighed by their gruesome and inflammatory character; and further the trial court failed to exercise its discretion to weigh the admissibility of the photographs by the proper rule of evidence, i.e., that the photographs were admissible only if their essential evidentiary value outweighed their gruesome and inflammatory character, all in violation of the due process clause of the Fourteenth Amendment.
 
 
 15
 Reply Brief for Appellant, at No. 83-1040, Exhibit A, at 9 (emphasis added).
 
 
 16
 In addition, counsel for Sullivan represented at oral argument that she had presented the constitutional claim to the state courts and that the Pennsylvania Supreme Court had considered it in deciding that the admission of the color slides into evidence was not an abuse of discretion. A close examination of the supreme court's opinion supports her assertion. In dissent, Justice Roberts argued that "[t]he admission into evidence of the thirty-nine color slides of the victims, in the absence of any need to have the jury see this evidence, deprived [Sullivan] of a fair trial." Commonwealth v. Sullivan, 472 Pa. at 177, 371 A.2d at 491. It is clear from this characterization of the admission of the color slides as a violation of Sullivan's fair trial right that Sullivan's due process claim was not only presented, but considered by the state court.[2]
 
 IV.
 
 17
 Sullivan first argues that the magistrate, by conducting his own evidentiary hearing, impermissibly considered facts not found in the trial court record in reaching his conclusion that there was sufficient evidence to support the conviction. Because the district court adopted the magistrate's findings, Sullivan contends, its determination was error. Alternatively, he argues that even assuming the district court relied exclusively on evidence adduced at trial, that evidence was insufficient to support his conviction. We disagree with both arguments.
 
 
 18
 It is axiomatic that a federal habeas court reviewing the evidence in support of a petitioner's state court conviction must look to an unaugmented state court trial record. Here, the magistrate explicitly limited the evidentiary hearing he conducted to the issue of conflict of interest and based his sufficiency of evidence determination solely on facts found by the Pennsylvania courts. United States ex rel. Sullivan v. Cuyler, 553 F.Supp. at 1245-46, 1251 n. 26. Similarly, the district court only adopted the magistrate's sufficiency of evidence determination after independently reviewing the state court trial record. Id. at 1238. We conclude, therefore, that the district court properly relied on an unaugmented trial record to support its sufficiency of evidence determination.
 
 
 19
 Further, based solely on the state court record, there was sufficient evidence to convict. When Sullivan first presented his claim that the evidence was insufficient to support his conviction to the district court, it denied him habeas relief, relying on Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). Sullivan v. Cuyler, Civ. No. 77-2527 (E.D.Pa. Feb. 2, 1978). Thompson provided that to reverse a conviction on due process grounds, there must be no evidence of record to support it. The United States Supreme Court subsequently found the Thompson "no evidence" rule inadequate to protect against misapplications of the constitutional standard of reasonable doubt. It thus established a new standard of review to govern the sufficiency of evidence inquiry:
 
 
 20
 the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]
 
 
 21
 Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789; see also Paullet v. Howard, 634 F.2d 117, 118 (3d Cir.1980) (per curiam). On remand, therefore, we instructed the district court to reconsider the sufficiency issue under Jackson. United States ex rel. Cuyler v. Sullivan, 631 F.2d at 16. The district court found that a rational trier of fact could have found Sullivan guilty of conspiracy beyond a reasonable doubt.
 
 
 22
 Considering the evidence, as we must, in the light most favorable to the Commonwealth, we agree with the district court, although we fully confess that this issue is very close. We find that a reasonable juror could have inferred that Sullivan came to the union hall on June 17, 1966 to await the arrival of Gorey and Janda, that at about 7:15 p.m. that evening, Gorey and Janda were murdered, that Sullivan was present in the union hall at the time of the killings, and that Sullivan and others left the scene immediately following the shooting, after first attempting to conceal the murders. In addition, a reasonable juror could have inferred that Sullivan and Carchidi wanted McGrath--a potential witness--out of the building before the shooting occurred. From these inferences, it would have been reasonable for a juror to conclude that Sullivan was part of a conspiracy to kill Gorey and Janda. We conclude, therefore, that there was sufficient evidence to support Sullivan's conviction, and we affirm the district court's decision to deny habeas relief on that basis.
 
 V.
 A.
 
 23
 Noting that the federal courts are traditionally bound by state court factfindings on habeas review, the Commonwealth contends that on remand, it was improper for the district court to order an evidentiary hearing on the issue of conflict of interest. We disagree.
 
 
 24
 Federal courts, in habeas proceedings, must accord a presumption of correctness to state court factfindings. Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). That presumption is inoperative, however, if the merits of the factual dispute were not resolved in the state hearing. Townsend v. Sain, 372 U.S. at 293, 313, 83 S.Ct. at 745, 757, 9 L.Ed.2d 770 (1963); 28 U.S.C. Sec. 2254(d). In such circumstances, the federal court must grant an evidentiary hearing to a habeas applicant. Id. Here, because the state hearing was conducted under a misapprehension of the controlling legal precepts, the findings made were insufficient to ultimately resolve the conflict of interest question.
 
 
 25
 To prove a conflict of interest violative of the sixth amendment, a claimant must prove (1) multiple representation that (2) created an actual conflict of interest that (3) adversely affected the lawyer's performance. Cuyler v. Sullivan, 446 U.S. at 348, 100 S.Ct. at 1718. This test, however, was announced subsequent to the Pennsylvania Supreme Court's decision. That court, therefore, never reached the heart of the conflict of interest inquiry. It simply rejected Sullivan's conflict of interest claim by concluding that there was no multiple representation. It supported its conclusion by finding that DiBona made all the decisions relevant to the defense and by crediting DiBona's statements that he had only Sullivan's interests at heart when representing him. The court's determination that no multiple representation existed was then rejected both by this court and the United States Supreme Court.
 
 
 26
 Because the Pennsylvania Supreme Court determined that there was no multiple representation, we conclude that the state court record is devoid of factfinding on the issue of whether an actual conflict of interest adversely affected counsel's performance. Although the Commonwealth argues that we should be bound by the court's credibility determination that DiBona had no conflict of interest, we conclude that because DiBona and Peruto have been deemed counsel to both Sullivan and his co-defendants, the state court factfinding, contaminated by legal error as it is, is incomplete. "Under such circumstances, the district court [could not] ascertain whether the state court found the law or the facts adversely to the petitioner's contentions." Townsend, 372 U.S. at 314, 83 S.Ct. at 757. Because an actual conflict of interest affecting the attorneys' performance could arise from Peruto's representation alone, and because the state court did not address this issue, we conclude that an evidentiary hearing was necessary to develop the facts about counsel's role in the representation of Sullivan and to provide Sullivan a full and fair hearing on the issue of actual conflict of interest.
 
 B.
 
 27
 The Commonwealth next contends that it was improper for the district court to delegate the conduct of that hearing to a magistrate. It argues that such delegation violates 28 U.S.C. Sec. 636(b)(1)[4] and article III of the Constitution. It then contends that, even assuming the delegation was proper, the district court violated 28 U.S.C. Sec. 636(b)(1) by adopting the magistrate's findings without making a de novo review of the record. We reject each of these contentions.
 
 
 28
 Section 636(b)(1)(B), as set out in the margin, allows a judge to designate a magistrate to conduct evidentiary hearings on "applications for posttrial relief made by individuals convicted of criminal offenses." The Commonwealth maintains that a habeas petition does not come within this statutory language. We disagree, noting that Sec. 636(b)(1)(B) was specifically adopted as part of the 1976 amendments to the Magistrates Act for the purpose of allowing magistrates to conduct evidentiary hearings in federal habeas cases. United States v. Raddatz, 447 U.S. 667, 674, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). Further, it is well settled that allowing magistrates to conduct evidentiary hearings under Sec. 636(b)(1)(B), does not violate article III of the Constitution. Id. at 681-84, 100 S.Ct. at 2415-16. Moreover, we find that the district court fulfilled its duty to make a de novo determination of those portions of the magistrate's findings and recommendations to which objection was made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). The district court reviewed the entire record, including the trial transcript, the post-conviction hearing transcript, all briefs and memoranda submitted by counsel, and all prior state and federal court opinions. It then listened to oral argument. Finally, it considered each of the parties' objections to the magistrate's report and addressed them in its opinion. See United States ex rel. Sullivan v. Cuyler, 553 F.Supp. at 1238-43.
 
 C.
 
 29
 Finally, the Commonwealth contends that the district court erred in finding that the multiple representation of Sullivan and Carchidi rose to the level of an actual conflict of interest, violative of petitioner's sixth amendment rights. We disagree.
 
 
 30
 As we have already established, there is a dual inquiry in multiple representation cases. To prove ineffective assistance of counsel violative of the sixth amendment, the claimant must establish: (1) an actual conflict of interest that (2) adversely affected counsel's performance. Cuyler v. Sullivan, 446 U.S. at 348, 100 S.Ct. at 1718; United States v. Laura, 667 F.2d 365, 370 (3d Cir.1981). Actual conflict of interest is evidenced if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action. See Turnquest v. Wainwright, 651 F.2d 331, 333 (5th Cir.1981). This conflict must cause some lapse in representation contrary to the defendant's interests but such lapse need not rise to the level of actual prejudice. Cuyler v. Sullivan, 446 U.S. at 349-50, 100 S.Ct. at 1718-19; Bailey v. Redman, 657 F.2d 21, 23, 24 (3d Cir.1981) (per curiam), cert. denied, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 (1982).
 
 
 31
 Sullivan presents several instances in which he alleges that an actual conflict of interest arose, to-wit: (1) defense counsel's failure to call witnesses outside the union hall when the shooting occurred; (2) their failure to call Hession--the union treasurer--to impeach McGrath by corroborating Sullivan's reasons for being in the union hall; (3) their decision to advise Sullivan not to testify on his own behalf; and (4) their failure to call Carchidi to testify. The district court found the first three of these contentions meritless, and we agree. The testimony of DiBona and Peruto at the post-conviction hearing shows that their tactical decisions in each of those instances were designed to capitalize on a weak prosecution case and were not premised in any way on a consideration of the co-defendants. Moreover, we need not dwell on these three alleged instances of conflict of interest because the strongest case of conflict rests on petitioner's fourth contention. It was on this contention--defense counsel's failure to call Carchidi to testify--that the district court based its finding of an actual conflict of interest that adversely affected counsel's performance. We must accept that finding unless it was clearly erroneous. Krasnov v. Dinan, 465 F.2d 1298 (3d Cir.1972).
 
 
 32
 During the course of the trial, and over a defense hearsay objection, the trial judge permitted the Commonwealth's witness, McGrath, to testify that after hearing noises like firecrackers, co-defendant Carchidi said to him, not in the presence of Sullivan, "Get out of the building and don't say nothing." In post-conviction proceedings in 1974 and again in the district court in 1982, Carchidi said he had been willing to testify that McGrath lied at Sullivan's trial, but that he was never called. He said his remark to McGrath was simply, "Let's get the hell out of here"--a statement with entirely different connotations than the remark attributed to Carchidi by McGrath.
 
 
 33
 The importance of the words attributed to Carchidi cannot be underestimated. They form the link to an alleged conspiracy with Sullivan. They were quoted in the district attorney's opening and closing speeches as well as the trial judge's instructions to the jury. And they found their way into Commonwealth briefs and the opinions of state and federal courts. These words were, without doubt, prejudicial to Sullivan. Yet, defense counsel decided not to use Carchidi's testimony, notwithstanding Carchidi's willingness to take the stand. The district court determined that decision resulted from an actual conflict of interest. Testimony by Peruto on cross-examination, credited by both the magistrate and the district court, supports this determination. He was asked:
 
 
 34
 Sir, you're not telling this court, are you, that if you had just represented Gregory Carchidi at the time of Sullivan's trial, you would have advised Carchidi to testify for Sullivan; are you?
 
 
 35
 A. That if I were only representing--
 
 
 36
 Q. Only representing Gregory Carchidi, who was awaiting trial for these 2 murders at the time of Sullivan's trial, isn't it a fact you would have urged him not to testify for Sullivan?
 
 
 37
 A. Yes, for the identical reasons that I didn't put it in Sullivan's case. But if I were representing Sullivan without Carchidi, I would have wanted that testimony of Carchidi.
 
 
 38
 App. Vol. VI, E-2, at 37.
 
 
 39
 We conclude, therefore, that, based on the record, the district court's determination that there was actual conflict of interest is not clearly erroneous. The record establishes that counsel's duty of loyalty to Sullivan to consider the sufficiency of the evidence presented and the availability of exculpatory evidence before deciding to rest his defense conflicted with their duty of loyalty to Carchidi to protect him against self-incrimination. In fact, it indicates that the conflict could not be avoided. As Peruto aptly stated with regard to the representation of Carchidi:
 
 
 40
 Carchidi took the position of, hey, don't hurt me. If it's going to help John, yes, I'm willing to help John; but not if it's going to hurt me. So on the one hand I have to listen to John Sullivan on the other hand I have to listen to Carchidi.
 
 
 41
 App. Vol. VI, E-2, at 21-22.
 
 
 42
 We further conclude that the record supports the district court's determination that the conflict adversely affected the attorneys' performance. By choosing to rest the defense in consideration of the possibility of the incrimination of Carchidi, it is clear that the attorneys failed to put forth their best case for Sullivan. There is no question that their performance was less than it would have been had they not been representing Carchidi as well.
 
 
 43
 In so concluding, we reject the Commonwealth's argument that there was no adverse effect because had Carchidi been represented by independent counsel, he would have been advised to invoke, and probably would have invoked, the fifth amendment if called as a witness. This argument seeks to require Sullivan to demonstrate prejudice. But, as we noted earlier, a defendant need not demonstrate actual prejudice to make out a violation of his sixth amendment rights where he has already established an actual conflict of interest adversely affecting counsel's performance. Cuyler v. Sullivan, 446 U.S. at 349-50, 100 S.Ct. at 1718-19. Here, it was sufficient for Sullivan to show that defense counsel consciously rejected calling Carchidi as a witness in the Sullivan trial to present Carchidi's case in the best light at his subsequent trial. We conclude, therefore, that the district court did not err in these crucial determinations.
 
 VI.
 
 44
 The judgment of the district court granting a writ of habeas corpus specifically conditioned in its order will be affirmed.
 
 SUR PETITION FOR REHEARING
 
 45
 The petition for rehearing filed by Appellant Cuyler, et al., in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 46
 Judge GARTH would grant the petition for rehearing.
 
 
 47
 STATEMENT OF JUDGE ADAMS SUR PETITION FOR REHEARING
 
 
 48
 This case comes to us on remand from the Supreme Court. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The Court vacated the judgment in United States ex rel. Sullivan v. Cuyler, 593 F.2d 512 (3d Cir.1979), which had directed that John Sullivan be discharged from custody unless the state retried him in a reasonable time.
 
 
 49
 After his conviction for participating in two brutal murders, Sullivan complained that he had been denied effective assistance of counsel because his attorney's decision not to call a witness was tainted by conflict of interest. A panel of this Court granted relief on the ground that concurrent representation of several persons who had been charged with the murder enmeshed Sullivan's counsel in a possible conflict. The Supreme Court held that the mere possibility of conflict was insufficient to nullify a criminal conviction; rather, to demonstrate a violation of Sixth Amendment rights, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance. 446 U.S. at 350, 100 S.Ct. at 1719. The Supreme Court remanded the case so that Sullivan's claim could be adjudicated under the proper legal standard.
 
 
 50
 On remand, the panel concludes that a writ of habeas corpus should issue because a conflict of interest did adversely affect his counsel's performance. More specifically, the panel finds adverse impact on Sullivan's representation in the role an assistant counsel played in the decision not to call as a witness Gregory Carchidi, who had also been indicted for the same crime of which Sullivan stood accused. The panel reaches this conclusion as to adverse impact in spite of a finding, accepted by the Pennsylvania Supreme Court, that Sullivan's chief counsel decided not to call Carchidi to avoid the possibility that the prosecution might extract evidence incriminating Sullivan through cross-examination of Carchidi.[1]
 
 
 51
 The decision announced by the panel represents, in my view, a questionable and troubling erosion of the presumption of correctness that federal courts must accord the factual determinations of state courts in reviewing habeas petitions. 28 U.S.C. Sec. 2254(d); Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1980). In addition, the panel's decision would appear to threaten the important principle of finality in criminal convictions obtained after full review by state courts. Finally, the rule governing multiple representation of criminal defendants, at least as applied in this case, may entail serious practical difficulties for the administration of criminal justice.
 
 
 52
 Sullivan's conviction has been reviewed twice in the several tiers comprising the state criminal system in which his case was originally heard. His trial has also been examined by a federal magistrate and a federal district judge. A panel of this Court has twice scrutinized the procedures through which Sullivan's guilt has been established, and the Supreme Court of the United States has extensively reviewed the proceedings. Now, sixteen years after the crime, Sullivan will receive a new trial on the basis of an objection that was raised for the first time many years after the original trial and had not been made an issue on direct appeal.
 
 
 53
 The burden of demonstrating that an error at trial will support a collateral attack on the constitutional validity of a state court judgment is "even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). We are entitled to presume that Sullivan stands "fairly and finally convicted," since he has exhausted his state appeal and has had "a fair opportunity to present his federal claims to a federal forum." United States v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). The standard of review under 28 U.S.C. Sec. 2254 is strict, not because state criminal convictions are subject to less scrutiny than federal convictions, but because such collateral review involves questions of comity and threatens the finality of legally obtained judgments.
 
 
 54
 In our federal system, the states bear the primary responsibility for defining and enforcing the criminal law. Federal intrusion into state criminal trials fairly conducted and reviewed can threaten a state's legitimate right to punish those who commit serious crimes and frustrate its good-faith attempt to preserve constitutional rights through a structured system of appeals. See Engle v. Isaac, 456 U.S. 107, 128, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982). Federal review of state criminal proceedings is important to our system of guaranteed rights, but that review must remain subject to standards designed to maintain the vitality of the court systems whose decisions are questioned. The core of those decisions is the finality of judgments rendered through procedures that are fundamentally fair. While a writ of habeas corpus technically entitles the petitioner only to a retrial, in practice it can mean complete freedom from prosecution. With the lapse of time--here, more than sixteen years after a double slaying--witnesses vanish or their memories fade; sometimes, as in the case at bar, key participants in the orginal trial will have died. As a result of the panel's decision, many prisoners may now be able to file petitions for habeas, claiming that, although their convictions became final many years ago, their legal representation at trial may have been flawed by a conflict of interest. It may be next to impossible to counter such allegations at such a late date.
 
 
 55
 For many years it had been the accepted practice for a single attorney to represent several defendants at a criminal trial. Although I applaud the attempt to guard against the possible dangers inherent in multiple representation, I believe we must also recognize that the law now governing such representation is quite different from what it was in the past. See Hyman, Joint Representation of Multiple Defendants in a Criminal Trial: The Court's Headache, 5 Hofstra L.Rev. 315, 318-20 (1977). In brief, the conflict rule, as applied by the panel in this case, brings to the fore the problem of retroactive application of a new rule. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1965); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1964). The subsequent discovery of a constitutional defect not legally cognizable at the time of trial does not necessarily render the original trial fundamentally unfair. See generally Mackey v. United States, 401 U.S. 667, 675, 91 S.Ct. 1160, 1164, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring and dissenting).
 
 
 56
 Finally, I have considerable doubt about several factual conclusions reached by the panel. I am much less certain, for instance, that Sullivan was adversely affected by the decision not to call Carchidi as a witness.[2] Indeed, there is little hard evidence to suggest that Carchidi would have testified. In any case, I believe that we are bound, absent unusual circumstances, to accept the findings of the Pennsylvania Supreme Court on this and several other points.[3] See Sumner, supra, 449 U.S. at 544-52, 101 S.Ct. at 767-71. I feel constrained to vote for rehearing because of fundamental questions of comity and finality that the panel has apparently not addressed in reaching its judgment. I also believe that the rule governing multiple representation of criminal defendants, as applied in this case, requires consideration of the retroactivity of newly evolving constitutional concepts.
 
 
 57
 Judge GARTH also votes for rehearing and joins in this statement.
 
 
 
 [1]
 For a complete recital of these events, see the state court's discussion in Commonwealth v. Sullivan, 472 Pa. 129, 147-49, 371 A.2d 468, 477 (1977)
 
 
 [2]
 Because we affirm the district court's conditional grant of Sullivan's request for habeas relief on other grounds, we will not reach the issue of whether the admission into evidence of the color slides violated his due process rights
 
 
 [3]
 This inquiry is less rigorous than that conducted under state law. It does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt," Jackson v. Virginia, 443 U.S. at 318-19, 99 S.Ct. at 2788-89 (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966) (emphasis added)), but only to consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," id. at 319, 99 S.Ct. at 2789
 
 
 [4]
 Section 636(b)(1) provides in relevant part:
 (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of ... applications for posttrial relief made by individuals convicted of criminal offenses....
 (C) ... A judge of the court shall make a de novo determination of those portions of the [magistrate's] report or specified proposed findings or recommendations to which objection is made....
 28 U.S.C. Sec. 636(b)(1)(B), (C).
 
 
 [1]
 See Commonwealth v. Sullivan, 472 Pa. 129, 161-62, 371 A.2d 468, 483-84 (1977), where the Pennsylvania Supreme Court declared:
 [Assistant counsel] Peruto testified that it was Mr. (now Judge) DiBona who served as chief counsel for [Sullivan] during trial and made all decisions relevant to Sullivan's defense while he, Peruto, was merely assisting.... This conclusion is supported by Judge DiBona's statements that his stewardship was in no way affected by the consideration of the co-defendant's cases but was solely a product of what he considered to be the best course in his representation of Sullivan....
 In the instant case, Judge DiBona believed that there was insufficient evidence upon which to convict Sullivan. He therefore refrained from calling any defense witness to avoid the possibility of exposing them to cross-examination through which the prosecution might have extracted those elements necessary to complete their proof.
 Since it seems reasonable to assume that any competent lawyer would have advised Carchidi to protect himself by not testifying at Sullivan's trial, there is a serious question whether the panel has followed the Supreme Court's mandate that a writ of habeas corpus issue in cases of multiple representation only when adverse impact has actually been shown. Cuyler v. Sullivan, 446 U.S. at 348, 100 S.Ct. at 1718. It is not without significance that even at his own trial, Carchidi declined to testify.
 
 
 [2]
 See supra note 1
 
 
 [3]
 Although I do not address in this statement the arguments presented by the Commonwealth in its petition for rehearing, that omission should not be read as a conclusion that these arguments are not worthy of review in banc