NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4228
_____

UNITED STATES OF AMERICA

v.

TAMARA SANTARELLI,
                            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 3-11-cr-00036-002)
District Judge: Honorable Edwin M. Kosik
_____

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2014
_____

Before: MCKEE, *Chief Judge,* FUENTES, AND GREENAWAY, JR., *Circuit Judges*.

(Filed: August 21, 2014)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

This appeal stems from the criminal prosecution of Victor and Tamara Santarelli[1] for the alleged theft of the estate of Joann Striminsky.

At their criminal trial, both Santarellis chose Kevin Fitzgerald, Esq. to represent them jointly. After the jury returned a guilty verdict on charges of mail fraud, wire fraud, and conspiracy, Tamara Santarelli changed her mind regarding joint representation. After the District Court appointed counsel for her, but before sentencing, she filed a motion for a new trial based on an alleged violation of Rule 44(c) of the Federal Rules of Criminal Procedure and constitutionally ineffective assistance of counsel. The District Court denied her motion, and sentenced her to a term of imprisonment of 70 months for the mail and wire fraud charges, and a concurrent term of imprisonment of 60 months for the conspiracy charge. This timely appeal followed.

## I.     BACKGROUND

### A.     Factual Background

As we write primarily for the benefit of the parties, we recount only the essential facts.

The scheme between Appellant Tamara Santarelli ("Appellant") and her husband Victor J. Santarelli ("co-Defendant") is alleged to have begun in 2006. At that time, Joann Striminsky ("Striminsky"), co-Defendant's great-aunt, was 82 years old. The objective of the scheme was to defraud Striminsky of the assets in her estate.

---

[1] Victor and Tamara Santarelli are married. Although Victor filed an identical motion requesting a new trial, Tamara is the sole appellant in this appeal.

From 2002 to 2006 Victor's brother, David Santarelli ("David"), held Striminsky's power of attorney. In May 2006, Striminsky transferred her power of attorney from David to co-Defendant. On the same day, co-Defendant named himself as the personal representative of Striminsky in her will.

Over the next year, both before and after Striminsky's death, Appellant and co-Defendant depleted the estate's assets. They transferred the deed to Striminsky's house to joint ownership between Striminsky and co-Defendant, and liquidated Striminsky's annuity. Additionally, co-Defendant withdrew money from Striminsky's bank accounts, and Appellant had the power of attorney and the deed transfer recorded at the local courthouse. Furthermore, Appellant prepared all of the documents and forms necessary to change beneficiaries on all of Striminsky's insurance policies and her annuity. Lastly, co-Defendant officially signed these documents after being given the power of attorney. Appellant and co-Defendant both testified that their actions were done at Striminsky's direction.

### B. Procedural History

Appellant and co-Defendant were indicted on charges of mail fraud (Count One), wire fraud (Count Two), and conspiracy to defraud the United States (Count Three). At their arraignment, Appellant and co-Defendant elected to proceed jointly with a privately retained defense counsel, Kevin Fitzgerald ("Counsel"). Magistrate Judge Mannion explained that by proceeding with joint representation, Appellant and co-Defendant would be foregoing any future right to raise a Sixth Amendment ineffective assistance of

3

counsel claim. Judge Mannion also specifically inquired of Counsel, as well as Appellant and co-Defendant individually, what their understanding and appreciation of the process and consequences of being jointly represented was. After the District Court thoroughly probed the Santarellis about the perils of joint representation, the Santarellis waived their right to separate counsel.

In February 2011, Appellant and co-Defendant were convicted on all charges at trial based on their involvement in a scheme to defraud Striminsky and her estate of its assets. At that time, the District Court assigned Appellant and co-Defendant individual court-appointed counsel for post-trial motions.

Appellant's counsel filed a motion for a new trial, arguing that the District Court failed to conduct a Rule 44(c) hearing and allowed a conflict of interest to persist during trial that adversely affected Appellant's Sixth Amendment rights. The District Court denied Appellant's motion.

Appellant now appeals the Judgment of Conviction, arguing that the District Court erred in denying her motion for a new trial because the District Court allowed her to proceed to trial with joint counsel. This joint representation, Appellant argues, created a conflict of interest, violated Rule 44(c) of the Federal Rules of Criminal Procedure, and deprived her of her Sixth Amendment right to effective assistance of counsel.

4

## II.    ANALYSIS[2]

Appellant argues that, in violation of Rule 44(c), "the District Court failed to properly notify or advise [her] prior to trial that she had the right to independent [c]ounsel in order to avoid [a] conflict of interest." (Appellant Br. 11.)   Appellant asserts that "[t]he resulting conflict of interest effectively denied [Appellant's] right to [c]ounsel." (*Id.*) Indeed, "the sixth amendment guarantee of effective assistance of counsel [includes] . . . the right to the counsel's undivided loyalty," free of conflict of interest. *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 131 (3d Cir. 1984).  Rule 44(c) protects that right, and provides that whenever "two or more defendants have been charged jointly" and "are represented by the same counsel":

> the court must promptly inquire about the propriety of joint
> representation and must personally advise each defendant of
> the right to the effective assistance of counsel, including
> separate representation. Unless there is good cause to believe
> that no conflict of interest is likely to arise, the court must
> take appropriate measures to protect each defendant's right to
> counsel.

Fed. R. Crim. P. 44(c).  The Supreme Court has advised that, while "the court's inquiry need not take any particular form," *Cuyler v. Sullivan*, 446 U.S. 335, 352 n.2 (1980), it "must at least affirmatively advise the defendants that joint representation creates potential hazards which the defendants should consider before proceeding with the representation." *Id.* at 352.  Under this standard, Appellant's argument—that the District

---

[2]  The District Court had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Court violated Rule 44(c) because "[t]he issue of joint representation was brushed over at the Initial Appearance hearing [and] the defendant was never advised of her right or of the dangers" (Appellant Br. 15)—must fail. The record demonstrates that Judge Mannion, in fact, "affirmatively advise[d]" Appellant and co-Defendant about the dangers of a conflict of interest developing from their joint representation. (*See* App. 3-4.)[3]

To the extent Appellant is arguing that the District Court did not satisfy the requirements of Rule 44(c) because it was Magistrate Judge Mannion who addressed joint representation, as opposed to the District Court judge, we agree with the District Court that such distinction is of no import. Rule 1 of the Federal Rules of Criminal Procedure defines "Court" as a federal judge and further defines "Federal judge" as including in its meaning "a magistrate judge."

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected [her] lawyer's performance." *Cuyler*, 446 U.S. at 348; *United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). "If the conflict results in a lapse in representation, demonstrated either through affirmative steps taken contrary to the defendant's best interests or through attorney omissions, prejudice to the defendant is presumed." *Pungitore*, 910 F.2d at 1141

---

[3] Even if we agreed that the District Court failed to satisfy the requirements of Rule 44(c), this alone would not justify a reversal based on ineffective assistance of counsel. *United States v. Pungitore*, 910 F.2d 1084, 1140 (3d Cir. 1990).

6

(internal quotation marks omitted); *see also Cuyler*, 446 U.S. at 349-50. Joint representation by itself does not create an actual conflict. *See Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). Instead, an actual conflict is evidenced if "during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (internal quotation marks omitted). We have noted that an actual conflict is "more likely to be evident in cases in which an attorney takes positive steps on behalf of one client prejudicial to another than in cases in which the attorney's actions are based on inaction and are passive ." *Id.* (internal citations omitted). But where it is alleged that the attorney failed to take action, as is asserted here, a defendant must show that "some plausible alternative defense strategy or tactic might have been pursued." *Id*. A defendant "need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative." *Id.* In addition, a defendant must "establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.*

Here, the District Court concluded that Appellant failed to "demonstrate[] a Sixth Amendment violation predicated upon a conflict of interest." (App. 724.) We review this conclusion de novo.[4] *Gambino*, 864 F.2d at 1071 n.3.

---

[4] Whether the representation of a defendant at trial was constitutionally inadequate is a mixed question of law and fact and is freely reviewed. *Gambino*, 864 F.2d at 1071 n.3. "However, to the extent that the legal conclusions reached on this appeal are dependent upon the findings by the district judge of basic, primary, or historical facts in the sense of

To determine if an actual conflict arose in the instant case, the critical question is whether Appellant and co-Defendant's interests diverged at trial. *Id.* at 1070. To this point, Appellant asserts that the "Government used a broad stroke of the brush to link [Appellant and co-Defendant] in a conspiracy," and because of "Counsel's loyalty to [co-Defendant's] defense," Counsel "failed to learn from government witnesses vital facts which would [have] aid[ed] [Appellant] in her defense." (Appellant Br. 16-17.)[5] Appellant also asserts that the "[j]oint representation prevented [C]ounsel from having a conversation with the Santarellis individually about the possibility of turning on the other." (*Id.* at 18.) Apparently, "[a]fter reviewing discovery materials, [turning on one another] was a viable option that was not explored [by Counsel] and would have offer[ed] a substantial benefit to one of them." (*Id.*)

First, we need not address Appellant's argument that Counsel failed to elicit testimony that could have aided her defense of lack of criminal intent because any such failure does not demonstrate that Appellant and co-Defendant have divergent interests. Instead, that failure would go to the adequacy of Counsel's representation, a different issue which is not before us. To the extent Appellant asserts that she is less culpable than

a recital of external events and the credibility of the witnesses, his findings should be accepted unless clearly erroneous." *Id.*

[5] For instance, Appellant asserts that Counsel: (1) failed to question a witness about legal charges that were dismissed against her based on the same set of facts in 2010; (2) failed to question witnesses regarding Appellant's missing signatures on bank accounts, bank transfers, or other documents relating to the fraud; and (3) failed to cross-examine Appellant's daughter, who testified on behalf of the government. (Appellant Br. 17.)

co-Defendant in carrying out the scheme, those facts, even if true, do not bear on her defense of lack of criminal intent.

Moreover, we reject any argument that Counsel, but for his joint representation, could have demonstrated Appellant did not carry out the scheme to defraud. Appellant testified to committing acts that, taken together with co-Defendant's acts, depleted the assets of Joann Striminsky and her estate. In light of this, Appellant's assertion regarding Counsel's omissions do not demonstrate a "plausible alternative defense"—different from lack of criminal intent—that "might have been pursued" on her behalf. *Morelli*, 169 F.3d at 810.

Appellant falls short of establishing "divergent interests," as is required for a finding of an actual conflict. *Pungitore*, 910 F.2d at 1141.

### III.    CONCLUSION

For the reasons set forth above, we will affirm the District Court's denial of Appellant's motion for a new trial.

9