NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4271
_____

UNITED STATES OF AMERICA

v.

VICTOR SANTARELLI,
                                        Appellant


_____


On Appeal from the District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 3-11-cr-00036-001)
District Judge: Honorable Edwin M. Kosik
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 20, 2014

Before: AMBRO, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Filed: March 19, 2015)


_____


OPINION[*]
_____



**SCIRICA**, *Circuit Judge*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Defendant Victor J. Santarelli, III, appeals the denial of his motion for a new trial on the theory that his counsel's joint representation of his codefendant wife at trial violated his Sixth Amendment right to effective assistance of counsel by creating a conflict of interest. In the alternative, he claims the court erred in applying several enhancements under the Sentencing Guidelines. We will affirm.

## I.

In 2006, Victor Santarelli and his wife, Tamara, commenced a scheme to defraud Victor's great aunt, 82-year-old Joann Striminsky, and deplete her assets and estate. David Santarelli, Victor's brother, had power of attorney for Striminsky until 2006, when Striminsky appointed Victor as her power of attorney and named him her personal representative in her will. Soon thereafter, Victor and Tamara began to drain Striminsky's estate of its assets. They transferred to themselves the deed to Striminsky's house in order to sell it; transferred money from Striminsky's bank accounts into their own account; liquidated her annuity; and named themselves beneficiaries of her insurance policies. And after Striminsky died in 2007, they did not promptly alert the relevant insurance companies and Victor did not distribute Striminsky's assets to the beneficiaries named in her will.

In May 2009, David Santarelli contacted the Pennsylvania State Police with suspicions of fraudulent activities in the finances of his late aunt. Victor and Tamara Santarelli were indicted on three counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, wire fraud in violation of 18 U.S.C. §§ 1342 and 1343, and conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 371. At trial, Victor and

Tamara were represented by the same counsel. At arraignment, the Magistrate Judge advised the defendant of the dangers of joint representation, explained the potential for a conflict of interest, and obtained both defendants' consent to proceed with the joint representation. The jury found Victor and Tamara guilty on all counts.

Through new counsel, Victor moved for a new trial. He claimed the joint representation created a conflict of interest and violated his Sixth Amendment right to effective assistance of counsel. Finding the two defendants presented a common defense and there was no actual conflict of interest, the court denied the motion.[1] The case moved to sentencing, and Victor objected to several proposed enhancements, including, as relevant here, those based on (1) amount of loss (U.S.S.G. § 2B1.1(b)(1)(F)), (2) ten or more victims (U.S.S.G. § 2B1.1(b)(2)(A)), and (3) obstruction of justice through perjury (U.S.S.G. § 3C1.1). At sentencing, the court overruled the objections and applied the enhancements.

## II.[2]

On appeal, Victor contends that the joint representation violated Federal Rule of Criminal Procedure 44(c) and his Sixth Amendment right to effective assistance of counsel. Specifically, he argues the District Court erred by not pointing out the potential

---

[1] We affirmed Tamara's conviction. *United States v. Santarelli*, 577 F. App'x 131 (3d Cir. 2014) (nonprecedential).

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over whether multiple representation presented a conflict of interest at trial, as it "is a mixed question of law and fact." *United States v. Gambino*, 864 F.2d 1064, 1071 n.3 (3d Cir. 1988) (citing *Gov't of V.I. v. Zepp*, 748 F.2d 125, 134 (3d Cir. 1984)). The court's factual findings, however, "should be accepted unless clearly erroneous." *Id.*

dangers of joint representation at trial and that his counsel failed to pursue trial strategies that would have benefited him because of counsel's simultaneous representation of his wife. We disagree.

The Sixth Amendment requires counsel to avoid conflicts of interest in order to fulfill the duty of loyalty owed to the client. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Rule 44(c), "a prophylactic measure designed to ensure that a defendant's Sixth Amendment right to effective assistance of counsel is not impaired by an actual conflict of interest," *United States v. Pungitore*, 910 F.2d 1084, 1140 (3d Cir. 1990), requires the court to

> promptly inquire about the propriety of joint representation and . . . personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c)(2). Accordingly, in order to establish ineffective assistance of counsel, Victor must demonstrate that his representation was impaired by 'an actual conflict of interest.' *Gov't of V.I. v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984) (quoting *Sullivan v. Cuyler*, 723 F.2d 1077, 1084 (3d Cir. 1983).

At arraignment, the Magistrate Judge[3] warned each defendant of the dangers of joint representation by citing potential conflicts of interest and giving an example of how Victor's lawyer might "have to cross-examine or question [him] not in [his] best interest, but in the best interest of another person, as well as supposedly represent [him]." App.

---

[3] For purposes of Rule 44(c)(2), "the court" includes magistrate judges. *See* Fed. R. Crim. P. 1(b)(2), (3).

4

33. The judge then confirmed, through questioning, that Victor understood the risks. Victor stated he wanted to proceed with the joint representation and also that he understood he would "be ultimately waiving or giving up [his] right to at any point in the future say that [his] case should be dismissed or reversed . . . based upon the fact that [his] counsel had a conflict in that he represented someone else in the case." App. 34–35. No further warning was necessary.

Nor can Victor establish an actual conflict of interest. *Cf.* Fed. R. Crim. P. 44(c) advisory committee's note to 1979 amendment ("The failure in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant."); *Zepp*, 748 F.2d at 135–36 ("[M]ultiple representation or merely the possibility of conflicting interest does not constitute a constitutional violation. The conflict of interest must be 'actual.'" (citation omitted)). "An actual conflict of interest 'is evidenced if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action.'" *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (quoting *Sullivan*, 723 F.2d at 1086). Accordingly, Victor must prove that "some plausible alternative defense strategy or tactic might have been pursued" and that "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.* (quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir. 1985)). "[A]n actual conflict of interest is more likely to be found where 'an attorney takes positive steps on behalf of one client prejudicial to another' as opposed to cases

5

where 'the attorney's actions are based on inaction and are passive.'" *United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999) (quoting *Gambino*, 864 F.2d at 1070).

The Santarellis presented a uniform defense and nothing at trial suggested their interests would diverge. Rather than departing from his wife's account—e.g., to establish she was more culpable or to mitigate her earlier adverse testimony regarding his actions—Victor fully adopted his wife's testimony and joined in their common defense. He testified that he "heard [his] wife's testimony," "agree[d] with her testimony," and "believe[d] everything she said." App. 656. When asked, "What did you think you were doing in all of these financial transactions," he stated that he was "[j]ust trying to follow what [Striminsky's] wishes were." App. 656. And when his wife was asked what she "believe[d she] and Victor were doing regarding Joanne Striminsky's financial affairs," she stated that she was "[d]oing what [Striminsky] asked him to do." App. 596–97. Both defendants testified they were carrying out Striminsky's directives and that they therefore lacked the requisite criminal intent.

Despite agreeing with his wife at trial, Victor now attempts to advance plausible alternative defense strategies his counsel could have pursued. *See Gambino*, 864 F.2d at 1070. He argues that, to his detriment, his counsel elicited testimony from Tamara that emphasized his role in the transactions. Our review of the record, however, undermines Victor's characterization of his wife's testimony. Although Tamara testified that it was Victor who signed the involuntary commitment papers for Striminsky and who decided to obtain Striminsky's power of attorney, App. 552–56; 579–80, Tamara's testimony was primarily self-inculpatory in that it revealed her knowledge of the relevant transactions.

6

Tamara's testimony did not jeopardize her and Victor's joint theory that they were fulfilling Striminsky's wishes.[4] Further, instead of rebutting Tamara's testimony during his own direct examination, Victor corroborated his wife's version of events by testifying, as she had done, that their acts, far from being criminal, were simply aimed at fulfilling Striminsky's wishes. App. 656. Accordingly, it is not plausible to suggest that, but for the joint representation, Victor's counsel would have argued that Tamara was more culpable after counsel had sought to establish, from the beginning of the trial, that the two worked together on behalf of Striminsky. *See* App. 84 (defense opening statement) ("Everything they did, they were attempting to carry out Joann Striminsky's wishes.").

Because Victor's and Tamara's interests did not diverge at trial, Victor cannot establish an actual conflict of interest. Without an actual conflict of interest, Victor cannot prove a violation of Federal Rule of Criminal Procedure 44(c) or ineffective assistance of counsel. Accordingly, we will affirm the denial of his motion for a new trial.

**III.**

Victor contends the sentencing court misapplied enhancements under the Sentencing Guidelines for (a) amount of loss (U.S.S.G. § 2B1.1(b)(1)(F)), (b) the number of victims (U.S.S.G. § 2B1.1(b)(2)(A)), and (c) obstruction of justice (U.S.S.G. § 3C1.1).

---

[4] Victor additionally argues that Tamara answered questions on cross-examination that deemphasized her role in the transactions, thereby implicating Victor. But it was the government that elicited this testimony, not the codefendants' counsel. The questioning, therefore, is not attributable to Victor's counsel for purposes of his ineffective assistance of counsel claim.

We disagree and will affirm.[5]

## A.

Victor argues the District Court erred in calculating the amount of loss caused by his fraud. Specifically, he objects to the valuation of Striminsky's home, which he attempted to sell after transferring the deed to himself. The Probation Officer valued the home at $90,000, Presentence Investigative Report ¶ 23 ("PSR"), while the Lackawanna County Assessor's Office valued the residence at $25,000, App. 756. The $90,000 contributed to the total loss of $164,390.55, PSR ¶ 23, for which the court applied a ten-level enhancement for a loss over $120,000. *See* U.S.S.G. § 2B1.1(b)(1)(F). Victor contends that the total loss, when based, in pertinent part, on the county assessor's valuation of the home, is only $99,390.55, which would merit an eight-level enhancement. *See* U.S.S.G. § 2B1.1(b)(1)(E).

For purposes of the relevant enhancement, "loss" is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 app. n.3(A). "Intended [l]oss" is "the pecuniary harm that was intended to result from the offense," including "intended pecuniary harm that would have been impossible or unlikely to occur," *id.*, from the point of view of "the defendant's subjective expectation," *United States v. Geevers*, 226 F.3d 186, 188 (3d Cir. 2000) (quoting *United States v. Yeaman*, 194 F.3d 442, 460 (3d Cir. 1999)). The sentencing court "need only make a reasonable estimate of the loss," U.S.S.G. § 2B1.1

---

[5] We review the District Court's interpretation of the Sentencing Guidelines de novo and its factual findings relating to sentencing for clear error. *United States v. Richardson*, 674 F.3d 215, 218 (3d Cir. 2012); *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).

app. n.3(C)—as it did here. The court found that the value of the property was "based on the assertions of the Defendant himself." App. 757. The government introduced a sales agreement for a prospective buyer and an inheritance tax return, both of which placed the value of the property at approximately \$89,000. App. 757–60. At trial, when asked whether he believed "\$89,000 in cash was coming [his] way," Victor answered, "Yes." App. 665. All these factors demonstrate that Victor believed, or at least expected, that the value of the home was approximately \$89,000, thereby meeting the definition of "intended loss," despite the county assessor's valuation of the home.[6] Accordingly, the court's calculation of loss was not clearly erroneous.

**B.**

Victor also contends the court erred in applying a two-level enhancement based on ten or more victims. *See* U.S.S.G. § 2B1.1(b)(2)(A). He argues the only victim is Striminsky's estate because Striminsky's will was being challenged as fraudulent such that only Striminsky's intestate heirs, of whom there were fewer than ten, should have been counted.

For purposes of the relevant enhancement, a "[v]ictim" is "any person who sustained any part of the actual loss," U.S.S.G. § 2B1.1 app. n.1, meaning "the reasonably foreseeable pecuniary harm that resulted from the offense," *Id.* app. n.3(A)(i). "Reasonably foreseeable pecuniary harm," in turn, is "pecuniary harm that the defendant

---

[6] We need not address Victor's argument that the amount of loss should be further reduced by \$10,408.95 to account for the amount of estate taxes Victor paid on the estate of Joanne Striminsky, because subtracting this amount would not bring the total loss figure below the \$120,000 threshold for the ten-level enhancement the District Court applied.

9

knew, or under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* app n.3(A)(iv).

We find no error in the court's factual finding that there were more than ten victims. It is uncontested that the number of beneficiaries in the will is greater than ten and that, as Victor acknowledged, the beneficiaries in the will received "[n]othing," App. 659. But there was no testimony at trial or sentencing suggesting the will was invalid, nor did Victor so contend at trial. As the Probation Officer noted, the will was witnessed, signed, and recorded in the Register of Wills. Third Addendum to PSR ¶ 33. The fact that it was being challenged does not mean it had been found invalid. Furthermore, Victor's claim at sentencing that the will was invalid was based on his own fraudulent activities— in other words, but for the defendants' criminal activities, the will likely would not have been challenged and the beneficiaries would have received money from the estate. Accordingly, we find no error in the court's application of a two-level enhancement for ten or more victims.

## C.

Finally, Victor argues the court erred in applying a two-level enhancement for obstruction of justice. *See* U.S.S.G. § 3C1.1. He argues that the enhancement should not be applied because the court did not make specific findings of perjury. We disagree.

Although it is preferable for the court to make separate findings, the court's application of the enhancement suffices where "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993); *see United*

*States v. Boggi*, 74 F.3d 470, 479 (3d Cir. 1996) ("[E]xpress separate findings are not required."). Where application of the enhancement necessarily encompasses the elements of perjury, as supported by the record, "we will not remand merely because the district court failed to engage in a ritualistic exercise and state the obvious for the record." *United States v. Fiorelli*, 133 F.3d 218, 221 (1998) (quoting *Boggi*, 74 F.3d at 479).

Here, the court properly applied the enhancement because Victor's trial testimony established the elements of perjury—i.e., falsity, materiality, and willfulness—as noted in the Probation Officer's Presentence Report that the court adopted.[7] Victor provided false testimony: the jury's guilty verdict was inconsistent with Victor's testimony that Striminsky wanted all her assets to be transferred to him. App. 663-64, 725–26; s*ee Fiorelli,* 133 F.3d at 222 ("[A] guilty verdict . . . binds the sentencing court to accept the facts necessarily implicit in the verdict." (ellipsis in original) (citation omitted)). Victor's testimony was necessarily false because, had the jury believed that Victor was simply fulfilling Striminsky's wishes, it could not have found he had the requisite mens rea. For this same reason, Victor's false testimony was material. *See also, e.g.*, Second Addendum to PSR ¶¶ 25 & 37 ("Had the jury been persuaded by the defendant's testimony, it would have tended to influence or affect the issue under determination." (citing U.S.S.G. § 3C1.1 app. n.6)). Finally, Victor acted willfully by joining his wife in advancing their

---

[7] The District Court stated at sentencing "the probation officer addressed the obstruction of justice objections and gave his reasons why that objection should not be recognized, and I agree with his reasons." App. 755; *see* Second Addendum to PSR ¶¶ 25 & 37.

theory that they were carrying out Striminsky's wishes. App. 656. In sum, the jury's finding of guilt necessarily encompasses all three elements of perjury.

In addition, the court had an independently adequate basis for applying the obstruction-of-justice enhancement, which applies to "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." U.S.S.G. § 3C1.1 app. n.4(E). Victor "failed to report for substance abuse testing in the Northern District of New York in June 2012 and subsequently fled with his wife to Florida," Third Addendum to PSR ¶ 37, as he was "perfectly willing to admit" at sentencing, App. 754.

## IV.

For the forgoing reasons, we will affirm both the denial of Victor Santarelli's motion for a new trial and his sentence.