**UNITED STATES of America**

v.

**GAMBINO, Rosario, Appellant.**

No. 87–5232.

United States Court of Appeals,
Third Circuit.

Argued Oct. 6, 1988.

Decided Dec. 30, 1988.

Rehearing and Rehearing In Banc
Denied Jan. 31, 1989.

Ramsey Clark (argued), Herald Price Fahringer, Diarmuid White Lipsitz, Green, Fahringer, Roll, Schuller & James, New York City, for appellant.

Samuel A. Alito, Jr., U.S. Atty., Edna Ball Axelrod (argued), Chief, Appeals Div. U.S. Attorney's Office, Newark, N.J., for appellee.

Before SLOVITER, MANSMANN, GREENBERG, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

GREENBERG, Circuit Judge.

Appellant, Rosario Gambino, appeals from an order entered in the United States District Court for the District of New Jersey by Judge Bissell following a plenary hearing denying his motion under 28 U.S.C. § 2255 to vacate his conviction entered on December 11, 1984 on various drug offenses and sentencing him to a total custodial term of 45 years and to pay a total fine of $105,000. The specific offenses and sentences were as follows:

counts 11 and 12, possession of heroin with intent to distribute and distributing heroin on or about January 18, 1984, at Atlantic City, New Jersey (merged), 15 years followed by a special parole term of ten years and a $25,000 fine; counts 17 and 18, possession of heroin with intent to distribute and distributing heroin on or about February 20, 1984, at Somers Point, New Jersey (merged), 15 years followed by a special parole term of ten years and a $25,000 fine, the sentence to be consecutive to those imposed on counts 11 and 12; count 2, conspiracy to distribute heroin from at least as early as October 1, 1983 until on or about March 16, 1984 at Atlantic City, New Jersey, 15 years and a fine of $25,000, the sentence to be consecutive to those imposed on counts 11, 12, 17 and 18; count 13, using a telephone at Cape May, New Jersey, on or about January 30, 1984 to facilitate the distribution of heroin, four years to be served concurrently with the other sentences and a $30,000 fine.

Appellant and co-defendants Erasmo Gambino, Antonio Gambino and Anthony Spatola, who were also convicted on various counts of the indictment, directly appealed from their convictions and, in addition, appellant appealed from an order denying him a new trial. We, however, affirmed. *United States v. Gambino*, 788 F.2d 938 (3d Cir.), *cert. denied*, 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986). Another defendant, Giovanni Bosco, was a fugitive at the time of the trial and thus was not tried with appellant. He was later apprehended and pleaded guilty to certain offenses charged in the indictment. The final defendant, Mario Gambino, was acquitted of all charges against him.

Inasmuch as the facts of the case were set forth in our earlier opinion they will not be repeated at length. *See* 788 F.2d at 940–41. It should be indicated, however, that evidence at the trial showed that appellant supplied the heroin mentioned in counts 11 and 12 of the indictment and sold on January 18, 1984 to undercover agents and that Spatola and Bosco obtained the heroin at the Caffe Milano in Brooklyn on

the night of January 17–18, 1984. In his earlier appeal appellant asserted that his trial attorney, Jacob Evseroff, had simultaneously represented Gaetano Mazzara in a case referred to as the pizza connection case, *United States v. Badalamenti, et al.*, No. 84–Cr–286, a narcotics conspiracy case in the United States District Court for the Southern District of New York. Appellant asserted that Mazzara was under suspicion as the source of the heroin sold to the undercover agents on January 18, 1984 by Spatola and Bosco. This dual representation was said to give rise to a conflict of interest on Evseroff's part since he failed to establish that Mazzara, and not appellant, was the source of the heroin. After an extensive discussion of appellant's claim, we indicated that circuit precedent required us to affirm his conviction without prejudice to his right to initiate a collateral proceeding under 28 U.S.C. § 2255 for the resolution of the conflict of interest question. 788 F.2d at 949–53.

Thus, appellant filed his motion in the district court claiming that his conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel because of Evseroff's alleged conflict of interest which, in appellant's view, adversely affected his performance at appellant's trial. His motion was supported by an affidavit of Evseroff, dated June 9, 1986, which set forth that at the time of appellant's trial Evseroff was also representing Mazzara, who was charged with being a leader of a multi-million dollar heroin distribution organization, in the *Badalamenti* case. Evseroff indicated that during appellant's trial he obtained entries from surveillance logs for January 17, 1984 at the Caffe Milano that suggested Mazzara's involvement in the events of that day.[1]

Evseroff further stated that it occurred to him that there was substantial evidence from which an argument could be made that Mazzara was the actual source of the heroin. Nevertheless, according to his affidavit, when Evseroff cross-examined the surveillance agents, he carefully avoided any questions which might have implicated Mazzara, out of a sense of loyalty to him and for fear that he might jeopardize Mazzara's position in his impending trial. Evseroff also stated that he did not call appellant's attention to the fact that an argument could be made that Mazzara was the source of the heroin. The affidavit gave no indication of who its author was or how it came to be executed.

A plenary hearing was held on the motion on October 31, 1986. On direct examination by appellant's attorney, Evseroff testified that he had met Mazzara in April 1984 and represented him in the *Badalamenti* case. Evseroff testified that during appellant's trial he was supplied with government surveillance reports showing that Mazzara was seen around the Caffe Milano on January 17, 1984.

Surveillance log J–146 was then admitted into evidence. It indicates that Spatola arrived in the area of the Caffe Milano at 2:27 p.m. and entered at 2:30 p.m. At 2:40 a yellow Mercedes Benz departed from in front of the cafe, a significant fact as the vehicle was identified as being appellant's. At 2:47 p.m. Spatola exited the cafe and entered the nearby 18 Avenue Tile Co. with two unidentified men. Mazzara and Francesco Castronovo arrived at the scene at 2:58 p.m. and entered the Caffe Milano at 3:00. At 3:09 p.m. they were observed on the street and then entering the 18th Street Tile Co. At 3:41 p.m. Mazzara and Francesco Castronovo left the tile store and departed the scene. Nothing in the log indicated that Mazzara was seen delivering heroin.[2]

Evseroff testified that the government argued at appellant's trial that appellant supplied the heroin to Spatola and Bosco which they sold to the undercover agents. But Evseroff said that even though he had examined the above described log prior to cross-examining the surveillance agents, he did not cross-examine them about Mazzara or seek additional information about his

---

1. These logs were obtained by Evseroff pursuant to 18 U.S.C. § 3500.

2. It appears that the surveillance was not constant as the agents did not want to arouse suspicions regarding their activities.

involvement in the episode because it would have been a "specious argument" to contend that Mazzara, and not appellant, was the source of the heroin and he did not want to bring out Mazzara's name. Evseroff said that while there was substantial evidence which could have been articulated to make an argument that Mazzara was the source of the heroin it would not have been a "substantial argument." He also said it would have been unfair to draw an inference that Mazzara was involved in the matter.

Evseroff also testified that he did not bring appellant's attention to the surveillance observations of Mazzara and did not tell appellant that an argument could be made that Mazzara was the source for the heroin. Further, he did not bring the matter to the attention of the trial judge as he perceived no conflict of interest requiring him to do so.

Evseroff explained how he came to execute the affidavit. After appellant's original appeal had been argued, another attorney, Charles Carnesi, who had represented the acquitted Mario Gambino at appellant's trial, asked Evseroff to sign an affidavit concerning the circumstances under which he made his decision not to examine the agents about Mazzara. Evseroff was willing to do this and, after appellant's convictions were affirmed, agreed to supply the affidavit. But he was busy on other matters so he therefore asked Carnesi to prepare the affidavit and submit it to him. Carnesi did so but Evseroff would not sign it in its original form as he objected to a statement in it that Mazzara was the source of the heroin. Consequently, the affidavit was redrafted and Evseroff then signed it. He said that the language in the affidavit was Carnesi's.

Evseroff testified that in October, 1986, a few weeks before the hearing on appellant's motion, he received from the Grievance Committee of the Appellate Division, Second Department of the Supreme Court of New York, an inquiry about a claim, predicated on his affidavit of June 9, 1986, that he had a conflict of interest in appellant's case. The government acknowledges that it brought the matter to the committee's attention. While Evseroff was concerned about the complaint it did not cause him to rethink the matter. He further testified that, because of his affidavit, the government had advised him it would object to his appearance *pro hac vice* in the District of New Jersey in another case. He also said that two weeks prior to the hearing, an FBI agent had served a subpoena on him for his income tax returns from 1979 to that time and that he had been asked to produce records of funds received from appellant and Mazzara. Evseroff engaged a lawyer to represent him and, after a meeting between his lawyer and the government attorney in charge of this case, at which the lawyer disclosed what Evseroff's position would be at the hearing, the demand for the tax returns was withdrawn.

On cross-examination by an assistant United States attorney, Evseroff explained what he meant by substantial evidence to argue that Mazzara was the source of the heroin. He indicated that the only information on the point he had at the trial was that Mazzara had been in the area on January 17, 1984 and had been arrested in an unrelated drug case. Evseroff felt that this would have been an insufficient basis upon which to pursue a line of questioning to establish Mazzara's involvement. He said appellant had "a good, viable, solid defense" with respect to the events of January 17, 1984, as appellant was never in Brooklyn on that day and his car, which was identified as being in the area of the Caffe Milano, was being used by someone else. Evseroff considered that the Mazzara defense was a specious argument irrelevant to his actual defense and would have impacted unfavorably upon appellant, a conclusion he based on his substantial experience as a trial lawyer. He was also concerned that the government might be able to link appellant and Mazzara in which event it would have been counterproductive to have brought up the Mazzara defense.

He further indicated that it was part of his defense strategy to establish that on January 17 there were 13 surveillance agents in Brooklyn but none saw appellant and that he, in fact, carefully brought this

out on cross-examination. He further developed at trial that only one agent saw appellant's car in the area on January 17. He also planned to call Carlo Filiberto, appellant's neighbor, to testify that he used appellant's car in Brooklyn on January 17 and that appellant was home in Cherry Hill, New Jersey, that day. Filiberto in fact so testified. Evseroff also knew that appellant would testify, deny guilt, and confirm that he had lent his car to Filberto.

Evseroff said that Spatola testified at the trial and gave testimony exculpatory as to appellant. In fact, Spatola testified at the trial that he obtained the heroin in Brooklyn on January 17 from Giovanni Saia and not from appellant. Evseroff said that when he cross-examined Spatola he did not try to discredit his statement that he obtained the heroin from Saia. He also said that Spatola's lawyer told him in advance that if Spatola testified he would exonerate his client. Evseroff further indicated that Spatola testified that appellant had nothing to do with the heroin sold on February 20, 1984. At the trial Spatola said that that heroin came from the "Little Baron."

Evseroff, however, was not completely clear as to when he knew Spatola would testify but he was certain that it was during the government's case, quite a while before the defense started and he thought it was before he cross-examined the surveillance agents. Thus, Evseroff considered that he would be impeaching the anticipated Spatola testimony if he attempted to show that Mazzara supplied the heroin and he did not want to do this as Spatola was his best witness. He also reiterated that while he did not discuss Mazzara's presence at the Caffe Milano with Gambino, that omission had nothing to do with loyalty to Mazzara. He further testified that he was aware that at trial he was not confronted with an either/or situation between appellant and Mazzara as the heroin source so that naming Mazzara would not necessarily exonerate appellant.

Carnesi also testified at the hearing. He said that he and Evseroff have offices in the same building in Brooklyn and are colleagues and friends. He represented Mar-

io Gambino who was a defendant at appellant's trial and was acquitted on all charges. About two months after the trial he was contacted by a defendant in the *Badalamenti* case regarding representation. To determine whether he would get into that case he examined certain documents from the case in which there were references to the events of January 17, 1984, which indicated it was the government's position that Mazzara and Castronovo had supplied the heroin for the January 18 sale. He brought this information to Evseroff's attention and he then cooperated with the attorney, Pamela Higgins, who prosecuted appellant's original appeal. He attributed his involvement on behalf of appellant to the facts that he was familiar with both appellant's case and the *Badalamenti* matter and that Evseroff was continuously on trial and less available to help on the appeal.

Carnesi testified that after the argument before this court on appellant's original appeal, Herald Fahringer, who along with Higgins was representing appellant, got in touch with him about obtaining an affidavit from Evseroff. Carnesi discussed the matter with Evseroff but no affidavit was executed until after appellant's convictions were affirmed. Evseroff asked him to draft the affidavit, and he did so, but then Evseroff objected to a portion indicating that the government had evidence that Mazzara or Castronovo was the source of the heroin. Thus, he changed the affidavit to say only that there was substantial evidence that Mazzara was the source of the heroin. According to Carnesi, Evseroff never contended that it would be a specious argument to raise the Mazzara defense. Evseroff signed the changed affidavit.

After Evseroff received the grievance inquiry he began to refer to his eschewing cross-examination of the surveillance agents on the Mazzara defense as a tactical decision. It also appeared from Carnesi's testimony that Evseroff had not seen the documents which Carnesi obtained in the *Badalamenti* case until after appellant's trial. The documents which Carnesi examined suggested that Castronovo and Mazzara arranged for the delivery of the heroin

on January 17 at the Caffe Milano to a "Gambino representative."

Judge Bissell decided appellant's 28 U.S.C. § 2255 motion in an unpublished decision dated March 10, 1988. He reviewed the law regarding conflicts of interest and the Sixth Amendment right to counsel and stated that when there is an actual conflict proven, prejudice to the defendant is presumed, though this presumption does not relieve a defendant of the burden of proving the existence of an actual conflict adversely affecting his attorney's performance. He found that there was no conflict and appellant was not deprived of effective assistance of counsel. The judge gave little weight to Evseroff's affidavit as he thought that its execution had been coerced. He pointed out that he observed Evseroff testify and he believed the testimony which explained Evseroff's trial tactics. The judge found that Evseroff was not aware of the *Badalamenti* papers which Carnesi read after appellant's trial suggesting Mazzara as the source of the heroin. Thus, Evseroff had very little actual knowledge linking Mazzara to the actual sale or delivery to Spatola. Judge Bissell accepted Evseroff's testimony that the Mazzara defense would have been specious because of the paucity of evidence available to Evseroff connecting Mazzara to the heroin, and would thereby imperil the credibility of appellant's defense.

The judge also said that inasmuch as "Evseroff had no idea as to what evidence the government might have linking Mazzara" with appellant it would have been foolish to launch a "Mazzara defense" only to be confronted with rebuttal evidence linking them and providing an argument that both were involved in the heroin delivery. Moreover, the judge said that "although he was not absolutely certain, Evseroff's best recollection was" that he knew prior to reviewing the surveillance log that Spatola would name someone other than appellant as his source for the heroin and, therefore, Spatola's credibility would be imperiled if Evseroff cross-examined the government agents about Mazzara's presence and the possibility of his involvement. Inasmuch as the success of appellant's de-

fense depended in large measure on Spatola's credibility, the judge found that it was a reasonable exercise of professional judgment by Evseroff not to push the Mazzara defense and jeopardize his real position.

Judge Bissell also found that Evseroff ably developed appellant's defense that he was not involved through witnesses such as Carlo Filberto, who testified at trial that he had borrowed appellant's yellow Mercedes Benz on January 17 and had driven to Brooklyn. This vehicle was, of course, identified as being at the Caffe Milano. The credibility of this defense could have been compromised by a "Mazzara defense" which might be viewed as "grasping at straws." Evseroff did not have a conflict of interest as it was completely consistent with his representation of both clients not to launch blindly a Mazzara defense. Even if a possible conflict existed, it was extremely speculative since even at the time of the 28 U.S.C. § 2255 hearing, the evidence was equally consistent with an inference that Mazzara, who had departed the area eight hours before the heroin was received by Spatola and Bosco, was not its source or was part of the same distribution chain as appellant. In view of these findings, Judge Bissell denied appellant's motion and this appeal followed.

In a discussion of the merits of the appeal the well-established governing law should be set forth. The Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest. *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 131 (3d Cir.1984). To establish constitutionally inadequate representation a defendant must prove that the attorney's performance was unreasonable under prevailing professional standards and that this performance prejudiced the defense, *i.e.,* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80

L.Ed.2d 674 (1984); *see also Diggs v. Owens*, 833 F.2d 439, 444–45 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988).

■ In this proceeding, however, appellant does not claim that Evseroff's representation was inadequate. Rather, he asserts that Evseroff had a conflict of interest because of his representation of Mazzara in view of the evidence pointing to Mazzara as the source of the drugs. In that circumstance appellant need only establish that there was multiple representation, the existence of which the government does not dispute and which thus need not be further discussed, and that there was an actual conflict of interest which adversely affected Evseroff's performance. *Burger v. Kemp*, 483 U.S. 776, ——, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987). *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3d Cir. 1983). If appellant is able to make these showings he is not obliged to demonstrate prejudice as it will be presumed. *Strickland v. Washington*, 466 U.S. at 692, 104 S.Ct. at 2067; *Cuyler v. Sullivan*, 446 U.S. at 349–50, 100 S.Ct. at 1719; *United States v. Gambino*, 788 F.2d at 950–51; *United States v. Costanzo*, 740 F.2d 251, 259 (3d Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). However, it "is important to note that overemphasis on the presumption of prejudice cannot operate to obviate the requisite obligation to demonstrate the existence of an actual conflict." *United States v. Gambino*, 788 F.2d at 951.

An actual conflict of interest "is evidenced if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." *Sullivan v. Cuyler*, 723 F.2d at 1086. To reach the level of constitutional ineffectiveness the conflict "must cause some lapse in representation contrary to the defendant's interests but such lapse need not rise to the level of actual prejudice." *Ibid.* A lapse in representation adversely affecting the defendant's interests can be demonstrated not only by what the attorney does, but by what he refrains from doing. *Holloway v. Arkansas*, 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978).

It seems clear that the existence of an actual conflict and adverse effects from it are more likely to be evident in cases in which an attorney takes positive steps on behalf of one client prejudicial to another than in cases in which the attorney's actions are based on inaction and are passive, as is charged here. Thus, if an attorney jointly represents in one trial two defendants claiming innocence, his conflict in arguing that one should be acquitted because the other is guilty is obvious. On the other hand, an attorney presenting a stronger defense for one client than another might well be free of conflict. Overall, conflicts problems are more likely to arise in cases involving joint representation in a single proceeding rather than multiple representation in which the attorney represents different clients in different matters, the situation here. *See United States v. Fahey*, 769 F.2d 829, 834 (1st Cir.1985).

■ Here, the alleged Sixth Amendment violation is that Evseroff did not advance the Mazzara defense because to do so would have been adverse to Mazzara. The United States Court of Appeals for the First Circuit in *United States v. Fahey*, 769 F.2d at 836, in which the alleged conflict was based on what an attorney did not do, indicated that:

> In order to establish an actual conflict the petitioner must show two elements. First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

Clearly, a defendant who establishes that his attorney rejected a plausible defense because it conflicted with the interests of another client establishes not only an actu-

al conflict but the adverse effects of it. Consequently, the test set forth in *United States v. Fahey* includes both the actual conflict and adverse effects prongs of the conflict of interest analysis. On the other hand, there is no conflict of interest adversely affecting the attorney's performance if an attorney at trial does not raise a defense on behalf of his client because to do so is not in that client's interest even though it is also in the interest of another client that it not be raised. To the contrary, that is a coincidence of interests.

■■■ The record must be considered in the light of the foregoing principles.[3] It is clear that the multiple representation did not give rise to an actual conflict of interest in the sense that anything which Evseroff could have done at the trial on behalf of appellant but omitted to do could have prejudiced Mazzara. Mazzara, of course, was not a defendant at the trial nor was he even named in the indictment against appellant and his co-defendants. Thus, he could not have been directly affected by the outcome of the case. Further, while Mazzara presumably would have preferred not to see his name advanced as a possible source of the heroin, appellant has not demonstrated how Mazzara would have been injured or prejudiced if this had happened. It is important to remember that the evidence available to Evseroff regarding Mazzara which he did not bring out at trial was already in the government's files. Thus, Evseroff's failure at worst is that he should have cross-examined the surveillance agents regarding their observations of Mazzara and otherwise used evidence in the government's possession regarding Mazzara to establish Mazzara as the source of the drugs sold January 18, 1984. Mazzara would not have been prejudiced if Evseroff had done this and thus it follows that appellant and Mazzara did not have conflicting interests in Evseroff's performance at appellant's trial.[4]

It is also important to remember that there is nothing in the record to support a contention that Evseroff had information not known to the government linking Mazzara to the heroin. Indeed, appellant does not allege that he did. Thus, Evseroff did not suppress evidence useful to appellant in order to avoid inculpating Mazzara. Accordingly, it must be concluded that from an objective viewpoint it was a matter of indifference to Mazzara if Evseroff had advanced him as the source of the heroin at appellant's trial.

It must be realized, however, that an attorney, though not having an objective conflict of interest, might for other reasons be reluctant to make a contention reflecting adversely on a client. Thus, as recognized by the Court of Appeals in *United States v. Fahey*, an attorney might not advance an alternative defense because of his other loyalties or interests. 769 F.2d at 836. Here, however, after listening to Evseroff's testimony and observing his demeanor at the hearing, Judge Bissell concluded that Evseroff did not raise the Maz-

---

**3.** The parties are in dispute over the standard of review, appellant asserting it is plenary and the government claiming Judge Bissell's findings must be accepted unless they are clearly erroneous. In *Government of Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir.1984), the court said that whether the representation of a defendant at trial was constitutionally inadequate is a mixed question of law and fact and thus the clearly erroneous rule is inapplicable and the district court's conclusion is freely reviewed. *Id.* at 134. Thus, a plenary determination of whether there was an actual conflict of interest adversely affecting Evseroff's performance must be made. However, to the extent that the legal conclusions reached on this appeal are dependant upon the findings by the district judge of basic, primary, or historical facts in the sense of a recital of external events and the credibility of the witnesses, his findings should be accepted unless clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.1988); *United States v. Allen*, 831 F.2d 1487, 1494 (9th Cir. 1987), *cert. denied*, ─ U.S. ──, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988); *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). It must be added, however, that even if the review was entirely plenary the result based on the record on this appeal would not be different than that reached.

**4.** This appeal does not deal with an ethics complaint. It is possible that conduct not violating a defendant's Sixth Amendment rights might nevertheless expose an attorney to discipline.

zara defense because he concluded that it was specious and could have imperiled the credibility of appellant's entire defense. While it is true that there was some reason beyond the logs, in the form of the *Badalamenti* materials, to link Mazzara to the January 18 heroin transaction, Evseroff was not aware of the materials at the trial and thus it cannot be concluded that his failure to use them was because of loyalty to Mazzara. Further, Evseroff knew, probably before he cross-examined the surveillance agents, that Spatola would testify that Saia was the source of the heroin delivered at the Caffe Milano, and that any attempt to establish that Mazzara had supplied that heroin would undermine Spatola's testimony. Thus, Evseroff's loyalty to Mazzara did not cause him to forego the Mazzara defense. The defense was not raised because from appellant's point of view it would have been foolish to do so. Therefore, Evseroff had no conflict of interest at appellant's trial.[5] *See Burger v. Kemp*, 483 U.S. at ——, 107 S.Ct. at 3120–21. While appellant now otherwise contends and is free with his criticism of Evseroff, a conflict of interest cannot be invented on his behalf simply so he can be given a new trial. Appellant should attribute his current predicament to his unlawful conduct, not to failings of his trial attorney.

As previously explained, for appellant to be granted relief he must show that, in addition to Evseroff having a conflict of interest, the conflict adversely affected his performance. For the reasons set forth as to why the Mazzara defense was not raised it is clear that even if Evseroff had a conflict of interest at the trial, which he did not, the conflict did not adversely affect his performance. It is evident from Evseroff's reasoning as to why he did not raise the Mazzara defense, that he would have not have advanced it even if Mazzara had nev-

er been his client.[6] *See Burger v. Kemp*, 483 U.S. at ——, 107 S.Ct. at 3121. Thus it cannot reasonably be concluded that the fact that Mazzara was his client in any way affected his trial performance.

The result reached herein is not undermined by the government's conduct, of which Gambino makes much, with respect to the grievance committee, the *pro hac vice* application and the tax returns. The government's actions are significant to this appeal only insofar as they impacted on Evseroff's credibility at the hearing. But Judge Bissell believed Evseroff's testimony and there is no reason why he was wrong in this as it was quite logical. It must be further pointed out that in view of the content of Evseroff's affidavit it was certainly appropriate for the government to bring the matter to the grievance committee's attention and to object to his admission *pro hac vice* in New Jersey. While the subpoena for his tax returns is more questionable, the government quite plausibly points out that it was interested in showing from the returns and from Evseroff's income records that Gambino, as a client, was financially more significant to Evseroff than Mazzara, thereby impeaching the content of the affidavit. Thus, when Evseroff supplied the information regarding the fees from them the subpoena was withdrawn.

Finally, while there was no direct evidence that Evseroff had been coerced when he signed the affidavit, Judge Bissell was not required to overlook the fact that Evseroff had defended a person involved in serious organized criminal matters and had not succeeded in obtaining his acquittal. Surely Judge Bissell could draw an inference that in such circumstances Evseroff might think it prudent to take steps to assist his client in obtaining a new trial,

---

**5.** Judge Bissell's findings regarding Evseroff's trial strategy must be accepted as they are not clearly erroneous. Nevertheless, the same conclusion would be reached on a plenary review.

**6.** While it must be concluded that appellant is not entitled to relief as Evseroff had no conflict of interest adversely affecting his performance

and there was thus no Sixth Amendment violation, it should also be pointed out that in any event there is no basis on which he could be granted relief for the convictions on counts 17, 18 and 2. On the record, there is no suggestion that the heroin involved in the hypothetical Mazzara delivery was related to those counts.

even if Evseroff thereby raised an ethical problem for himself.

In view of the aforesaid, the order of March 10, 1988 denying appellant relief will be affirmed.

SLOVITER, Circuit Judge, concurring.

While I agree with the conclusion that Judge Greenberg reaches in affirming the district court's denial of Gambino's motion pursuant to 28 U.S.C. § 2255, I reach that result by a somewhat different analytic route. I do not believe this is an appropriate case in which to divorce the inquiry regarding the presence of an actual conflict of interest from that of its adverse effect. In light of the procedural history of this case, I view the issue before us as only whether counsel for Rosario Gambino, Jacob Evseroff, was laboring under an actual conflict of interest which adversely affected his performance during the trial of Gambino.

We must examine the record before us in light of the Supreme Court's holding in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), that a mere potential conflict of interest is insufficient to taint a criminal conviction. Instead, the Court held, in order to establish a Sixth Amendment violation, defendant must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718.

The first time this issue was before this court was on the direct appeal from the conviction. *See United States v. Gambino*, 788 F.2d 938 (3d Cir.1986). At that time, Gambino argued that Evseroff's representation of him in this case while simultaneously representing Mazzara in the *Badalamenti* case in New York created an actual conflict of interest. Gambino argued that the actual conflict of interest was established by Evseroff's omissions in (1) failing to question government agents about Mazzara's involvement in the January 18 drug transaction, (2) failing to investigate and obtain additional witnesses to implicate Mazzara and exonerate Gambino, (3) failing to vigorously suggest to the jury during summation that Mazzara was a sup-

plier of heroin, and (4) failing to alert the trial judge of his dual representation either before trial or during trial when the conflict became apparent. *Id.* at 953.

This court concluded that "it is far from manifest that an actual conflict existed." *Id.* We stated that "[w]hile the evidence strongly indicates that there *may* have been a conflict, 'a possible conflict inheres in almost every instance of multiple representation.'" *Id.* at 953 (emphasis in original). We stated that inasmuch as "both parties have advanced various, plausible interpretations of the trial strategy" of Evseroff, we would affirm the conviction without prejudice to Gambino's ability to initiate a section 2255 collateral proceeding for the resolution of his conflict of interest claim. *Id.*

Because we distinguished Gambino's situation from the "exceptional situation" where it was apparent that "trial counsel labored under an actual conflict of interest," *id.*, I view our earlier holding as conclusively deciding that if Gambino produced nothing more than proof of the four omissions referred to above, we would not find an actual conflict of interest. An examination of the evidence produced at the section 2255 proceeding shows that Gambino did not produce persuasive evidence that Evseroff's trial conduct was tainted by the multiple representation. Thus, I respectfully disagree with Judge Mansmann's conclusion "that we are unrestricted by our prior decision."

In essence, Judge Mansmann relies for her conclusion that there was an actual conflict of interest which adversely affected Evseroff's performance on precisely the same conduct by Evseroff that Gambino referred to in his direct appeal when he argued that his Sixth Amendment right was violated. Were these omissions enough to fatally infect the trial, the first panel would have so held. Because nothing new and material was developed at the section 2255 hearing, we must give some effect to the first panel's decision, and thus I cannot agree with Judge Mansmann that we are "unrestricted."

In this case, the district court was instructed to determine whether Gambino's interpretation of trial counsel's performance or the government's contrary interpretation was more plausible, should the case return to it on a section 2255 motion. The district court, after hearing the evidence presented at the hearing, found that Evseroff "presented a credible picture of an experienced trial lawyer making legitimate, reasonable choices regarding a course of cross-examination and the pursuit of one or more defenses...." App. at 692. The court further found that "it was completely consistent with Evseroff's representation of both clients [Mazzara and Gambino] that he not launch blindly a 'Mazzara defense' in the Gambino litigation. The interests of [Gambino] were best served by this decision and the defense developed for him was a good one, had the witnesses supporting it been believed." App. at 697.

Of course, had the district court credited Evseroff's affidavit in which he stated that he avoided asking the FBI agents questions which could implicate Mazzara because he did not want to jeopardize Mazzara's impending trial, this case would be governed by our decision in *Sullivan v. Cuyler*, 723 F.2d 1077, 1086–87 (3d Cir. 1983). There we held that the testimony by one of the attorneys who had represented co-defendants that he would have employed a different strategy if he had only represented defendant Sullivan was enough to show an actual conflict of interest. Here, however, the district court gave no credence to Evseroff's affidavit because it found that the affidavit was procured under circumstances which suggested "the presence of underlying forces and pressures." App. at 691. Instead, the district court credited Evseroff's testimony at the hearing that his conduct at trial was motivated by trial strategy rather than by an effort to protect his other client, Mazzara.

It is apparent from the Supreme Court's most recent discussion of this issue following *Cuyler v. Sullivan* that an appellate court must defer to such findings by the district court. In *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), the Court upheld the district court's conclusion that the overlap of counsel whose office represented two defendants implicated in the same crime did not so infect the representation as to constitute an active representation of competing interests. The Court stated that the district judge "is in a far better position than we are to evaluate a charge of this kind," and referred to the role of the court of appeals as conducting "appellate review of these heavily fact-based rulings." *Id.* 107 S.Ct. at 3121.[1]

While I may have had grave reservations had I been the district judge about what could be viewed from the cold record as a possible attempt by the government to influence Evseroff's testimony at the hearing by complaining to a bar disciplinary committee about his conduct as reflected in the affidavit and subpoenaing his tax records, I am not free to make such a credibility determination. Since I am bound by the one made by the district court, I believe it follows that we are also bound to accept its conclusion that there was no actual conflict of interest which adversely affected Evseroff's representation of Gambino at his trial. For this reason, I also vote to affirm.

MANSMANN, Circuit Judge, dissenting.

The evidence in this case squarely presents us with the age-old truism that no person can properly serve two masters.[1] *See Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978) (conflict of interest indicated by "struggle to serve two masters") (quoting

---

**1.** Moreover, although Judge Mansmann states that the evidence of an actual conflict was not as strong here as in *Burger v. Kemp,* in *Burger* the majority of the Supreme Court rejected the conflict of interest claim over the strong dissent of three Justices who believed that the evidence there showed that counsel's joint representation caused him to forego on appeal a lesser culpa-

bility defense for one of the defendants. 107 S.Ct. at 3129–3133 (Blackmun, J., dissenting).

**1.** "No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other." Matthew 6:24.

*Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942)); *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980).

Because I believe that Evseroff's representation of Gambino was compromised by an actual conflict of interest which did, in fact, adversely affect his performance, I respectfully dissent.[2]

As a preliminary matter I address Judge Sloviter's contention that in our earlier holding in *United States v. Gambino,* 788 F.2d 938 (3d Cir.) *cert. denied* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986), we "conclusively decid[ed] that if Gambino produced nothing more than proof" of the omissions he alleged Evseroff had committed "we would not find an actual conflict of interest." This assertion is incorrect and flies directly in the face of our actual determination in the prior appeal that our affirmance of Gambino's conviction was made *"without prejudice* to his ability to initiate a § 2255 collateral proceeding for the resolution of his conflict of interest claim." *Id.* at 953 (emphasis added).

In the passage Judge Sloviter relies upon for her assertion that we have, in essence, already conclusively decided Gambino's present conflict of interest case, we merely stated:

> Both parties have advanced various, plausible interpretations of the trial strategy employed by Mr. Evseroff at Rosario Gambino's trial. Consequently, we cannot approach this record with the sanquinity envisioned by *Zepp.* The narrow exception in *Zepp* is tailored to fit only those exceptional situations that lend themselves to only one conclusion—that trial counsel labored under an actual conflict of interest.

788 F.2d at 953. This passage states nothing more than the fact that we did not view this case as involving the narrow exception set forth in *Government of Virgin Islands*

*v. Zepp,* 748 F.2d 125 (1984), to our general rule that we will not decide conflict of interest cases on direct appeal, without benefit of an evidentiary hearing. *Id.* at 133. *Zepp* carved out a narrow exception to the general rule for cases which, on direct appeal, present an adequate record upon which we can decide the conflict of interest claim. *Id.* Since this was not the case in *Gambino,* we did not feel sanguine, that is, we did not feel cheerfully confident to decide the issue and we, therefore, followed our general rule, affirming Gambino's conviction "without prejudice to his ability to initiate a § 2255 collateral proceeding for the resolution of his conflict of interest claim." 788 F.2d at 953. I conclude that we are unrestricted by our prior decision as we consider this case.

## I.

I view the two salient facts in this case to be: (1) that Evseroff was given information which any attorney not suffering from a conflict of interest would have investigated and (2) that Evseroff admits that he chose not to pursue this evidence, at least in part, because of the loyalty he felt to Mazzara.

It is astonishing to me that an experienced trial lawyer would not raise the fact that a reputed heroin supplier was observed in the vicinity near the time of the crime and was in the same establishment as Spatola, the person the government alleged actually received the heroin, and thus a key actor in the alleged distribution of heroin, during a crucial "scene" in the drama on the day of the crime. This is especially so when the precise issue for Evseroff's client at trial was whether that client or some other party had supplied the heroin and when the entire theory of the defense was that some other party had supplied the heroin.

---

2. I agree with Judge Greenberg that the analysis to be undertaken in conflict of interest cases is that set forth in *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), which requires a two part analysis once multiple representation is established. The defendant must show an actual conflict of interest and an adverse effect upon counsel's performance. *Id.* at 348, 100 S.Ct. at 1718. Under either Judge Greenberg's standard or Judge Sloviter's which joins the two inquiries, I believe the facts lead to the inescapable conclusion that Gambino's sixth amendment rights were violated.

The Supreme Court recently noted that "[a] few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants." *Wheat v. United States*, —— U.S. ——, ——, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988) (holding that district court has substantial latitude in refusing waivers of conflicts of interest). The repeated mention of Mazzara in the surveillance logs was exactly this type of information which altered the relationship between Mazzara, Gambino and Evseroff and which created a conflict of interest.

I cannot believe that an attorney not suffering from a conflict, upon learning that Mazzara, a man the attorney knew had been charged with being a major heroin distributor, was on the scene at the critical period in question in the case, and recognizing, as Evseroff acknowledges he did, that there was "substantial evidence" that Mazzara and not his client was the source of the heroin, would not, at a minimum, follow up on such information. Yet Evseroff asked no questions concerning Mazzara, requested no additional evidence of Mazzara's involvement from the government under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), sought no time for discovery, and did not even open the indictment in his own office which would provide him with the details of the heroin distribution charge levelled at Mazzara, details with which Evseroff claims he was unfamiliar.[3]

Why did he not do so? Evseroff asserts that he considered the possibility that such an argument could open the door to unknown rebuttal evidence possibly connecting Mazzara and Gambino. Yet in all the voluminous reports of government surveillance provided to the defense there was apparently no such link evident.[4] More significantly, Evseroff testified that he did not ask his client, Gambino, if there was

any such link. Nor did he request from the government any additional evidence it had of Mazzara's possible involvement in the offense so that he could make an informed decision. Evseroff did nothing.

Evseroff states that he also worried that evidence concerning Mazzara might be inadmissible. Although the district court states that this concern was "well founded," *United States v. Gambino*, No. 84–98, slip op. at 11 (D.N.J. Mar. 10, 1988), neither Evseroff, the government, nor the district court suggests a rule of evidence that would bar its admission. In any case Evseroff did not even attempt to introduce such evidence. Such timidity from a criminal defense lawyer of Evseroff's experience is surprising.

Evseroff claims that, while there was "substantial evidence" that Mazzara was the source of the heroin, this evidence would not support a "substantial argument" along these lines. This is mere sophistry on Evseroff's part. It is clear that the Mazzara defense argument which occurred to Evseroff was supported, as he states, by "substantial evidence," and was consequently, a substantial argument.

Evseroff also argues that the Mazzara defense might have undermined the credibility of Spatola. However, Spatola had not yet testified at the point in the government's case in chief when Evseroff learned of the Mazzara connection and Evseroff had not yet introduced the Spatola defense to the jury. Evseroff had merely argued that someone other than Gambino supplied the heroin. Evseroff, even if he knew at that point what Spatola would testify to, could have changed his defense entirely or merely added to it, without loss of esteem in the jury's collective eye. Evseroff would not thereby have jeopardized his "good, viable, solid defense" that Gambino was not in Brooklyn on that date and had lent his car to his neighbor.

**3.** I do not rely in my conclusions in this case upon any of the evidence made known to Evseroff subsequent to Gambino's trial and which a proper investigation would have disclosed. This evidence provided very strong support for an argument that Mazzara was indeed the sup-

plier and that prosecutors in the Southern District of New York had concluded as much.

**4.** Evseroff testified that he was aware of no evidence, other than the surveillance logs, which even mentioned Mazzara.

I view, with great skepticism, the preference by an experienced trial attorney for the exculpatory evidence of Spatola who variously identified his sources as "Giuseppe Saia," the "Little Baron," "Savarino Rosario," "Frank" and "Ignacio in Italy." There was no proof, other than Spatola's testimony, that indicated that any of these individuals ever existed. Mazzara on the other hand not only existed but was observed by government agents in the vicinity near the time of the crime. The gentlemen named by Spatola were never produced at trial. Mazzara on the other hand was a readily available, identifiable individual, and someone Evseroff knew had been charged as a major heroin supplier.

In any case it is a familiar trial tactic to argue in the alternative; that is, Evseroff could have promoted the Spatola defense that the unidentified "Little Baron" or "Saia" was the source and still could have raised a Mazzara defense as an alternative.

Evseroff testified at the § 2255 hearing that "one of the reasons, one of the factors, that entered into [his] decision not to cross-examine the agents on Mazzara [was that he] did not want to implicate Mazzara, [he] did not want to bring Mazzara's name out in the courtroom because [he] represented him." (App. 60.) This was an improper consideration. Rosario Gambino "was entitled to an attorney who can make a decision to use or not to use testimony *unfettered* by the effect of that decision on his other client's case." *Nealy v. Cabana*, 782 F.2d 1362, 1365 (5th Cir.) *cert. denied* 479 U.S. 819, 107 S.Ct. 83, 93 L.Ed.2d 37 (1986) (emphasis added).

Foregoing a defense, even in part, because of the desire not to implicate another client precludes a determination that the decision was the result of a tactical judgment as the district court did in the present case. In *United States v. Iorizzo*, 786 F.2d 52 (2d Cir.1986), the Court of Appeals for the Second Circuit determined that a "conflict of interest led defense counsel to forego a most relevant line of inquiry." *Id.* at 57. The conflict arose because defense counsel had previously represented the government's key witness in a different

proceeding. The court reversed the district court, rejecting the argument that the decision to forgo the line of inquiry was "the result of a tactical judgment by a conflict-free lawyer that such testimony would not be helpful to" the defendant.

I agree with Judge Greenberg's acceptance of the definition of "actual conflict of interest" provided in *United States v. Fahey*, 769 F.2d 829 (1st Cir.1985). That definition required the proof of two elements: (1) a plausible alternative defense, and (2) a conflict of that alternative defense with counsel's other loyalties. *Id.* at 835–36.

I also agree that applying this test to the instant case resolves not only the actual conflict portion of the *Cuyler* test but the adverse effect portion as well. As Judge Greenberg notes "[c]learly, a defendant who establishes that his attorney rejected a plausible defense because it conflicted with the interests of another client establishes not only an actual conflict but the adverse effect of it." Opinion at 1071. Once the defendant establishes that there was an actual conflict, he or she need not prove prejudice, but simply that a "lapse in representation" resulted from the conflict. *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980).

Applying the *Fahey* definition to this case, I would recognize (1) that a plausible alternative defense was available, that is, the Mazzara defense, and (2) that this defense conflicted with Evseroff's loyalty to his client, Mazzara, and perhaps to Evseroff's own pecuniary interest in the fee from the Mazzara representation. Thus, an actual conflict of interest existed.

If Evseroff had an actual conflict of interest, it is clear that that conflict adversely affected his performance. The effect of the conflict lay in the fact of not pursuing the Mazzara defense. Thus the *Cuyler* test is satisfied. A sixth amendment violation has occurred.

## II.

My conclusion that Evseroff suffered from an actual conflict of interest is buttressed by the evidence of Evseroff's

sworn affidavit which states, *inter alia,* that:

6. Representing MR. MAZZARA, as I did at the time, it occurred to me that there was substantial evidence from which an argument could be made that he was the actual source of the heroin which was the subject of this Indictment. Nevertheless, when I cross-examined the surveilling agents, I carefully avoided any questions which might have implicated MR. MAZZARA out of a sense of loyalty to him and for fear that I might jeopardize his position in his impending trial.

7. I did not call to the attention of ROSARIO GAMBINO the observations of Mr. Mazzara contained in the surveillance reports, nor did I discuss with him my belief that an argument could be made that Mr. Mazzara was, in fact, the source of the heroin.

The affidavit was not renounced by Evseroff. The district court attached little weight to it, however, because of the "presence of underlying forces." Despite this assertion the court cites no concrete evidence that these forces existed. The court asserts that the fact that "Carnesi was its draftsman" is one evidence of these forces at work in securing the affidavit. Yet Evseroff testified that, because of time constraints, he asked Carnesi, his friend, to draft the affidavit; that he would not sign the first draft because he did not agree with one of the items in it; that he read the second draft, and then signed it.

The only other "circumstances" which the district court articulates as the basis

for its "underlying forces" conclusion were: (1) the fact that Rosario Gambino's brother, who had retained all of the counsel in the case, met post-trial with Evseroff, and (2) that "Mario Gambino was of course at large, having been acquitted at trial." Slip op. at 8. A meeting between Evseroff and the Gambino brother who had retained Evseroff, a meeting which occurred at least fifteen months prior to Evseroff signing the affidavit and more than a year prior to our decision in *Gambino,* would not, without more, normally be considered unusual. Likewise, the fact that Mario Gambino was "at large" should not serve to discount Evseroff's affidavit. Under our system of justice when a person is acquitted of a crime he is not "at large"—he is free.

The district court's observations of the demeanor of the witness at the § 2255 hearing are, of course, entitled to deference by us. "This Court carefully observed the demeanor of both Messrs. Carnesi and Evseroff at the hearing. Particularly from Carnesi's lengthy, glib, analytical answers, it appeared to this Court that we were not getting the whole story as to the pressures brought to bear to secure success on the present motion." *Id.* at 9. Nonetheless, the government produced no direct evidence of "underlying forces" at work on Evseroff. Thus, while the court's observation that Carnesi's answers were "lengthy, glib, analytical" can be accepted as true by us, the court's conclusion that there were underlying forces at work in procuring Evseroff's affidavit seems unsupported by the evidence.[5]

---

5. On the other hand the government engaged in three concrete actions which may have been targeted at altering Evseroff's position with regard to the conflict of interest. First, the government filed an unethical conduct complaint, predicated upon Evseroff's affidavit, with a New York bar committee. Second, the government informed Evseroff that it would object to his appearance *pro hac vice* in an upcoming case in the District of New Jersey. The third and most questionable action on the government's part was the serving upon Evseroff, by an F.B.I. agent, two weeks prior to the hearing, a subpoena for his income tax returns from 1979 to that time, along with a request for the record of funds received from Gambino and

Mazzara. After a meeting between Evseroff's lawyer and the government attorney in charge of this case, at which Evseroff's lawyer disclosed what Evseroff's position would be at the hearing, the demand for the tax returns was withdrawn. The district court determined that Evseroff's testimony was unaffected by these actions.

It should be emphasized that if there is evidence of coercive measures employed by the government against criminal defense attorneys these actions should not be tolerated or ignored by a district court. It is worth noting in this regard that 18 U.S.C. § 1512 prohibits witness tampering ("Whoever knowingly uses intimidation ... with intent to .... influence, delay,

Judge Greenberg is incorrect in concluding that because the district court was permitted to note the fact that Evseroff had defended a person involved in serious organized crime matters and had failed to gain an acquittal, the district court could *ipso facto* dismiss Evseroff's affidavit as merely the result of "underlying forces and pressures," and give the affidavit no credence. This determination by the district court was clearly not only error under the plenary review standard we utilize in conflict of interest cases, it was also, to the extent it was based on fact determinations made by the district court, clearly erroneous.[6]

In *Government of Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir.1984), we defined the standard of review we utilize in conflict of interest cases:

Whether the representation a defendant received at trial was "constitutionally inadequate" is a mixed question of law and fact. *Strickland v. Washington*, 104 S.Ct. at 2070; *see Cuyler v. Sullivan*, 446 U.S. at 342, 100 S.Ct. at 1714. The "clearly erroneous rule" is inapplicable and we are called upon to "freely review the district court's conclusion." *United States ex rel. Johnson v. John-*

son, 531 F.2d 169, 174 n. 12 (3d Cir.), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976).

*Id.* at 134.[7]

The district court's conclusion that Evseroff did not raise the Mazzara defense simply because Evseroff concluded that it was specious and could have imperiled the credibility of Gambino's defense, is, like its determination that Evseroff's affidavit was the result of underlying forces, strongly contradicted by the record and based *not* upon facts but rather upon mere speculation.

### III.

#### A.

Judge Greenberg apparently intends to discount Gambino's claim with this assertion:

It seems clear that the existence of an actual conflict and adverse effects from it are more likely to be evident in cases in which an attorney takes positive steps on behalf of one client prejudicial to another than in cases in which the attorney's

---

or prevent the testimony of any person in an official proceeding" violates this section). This is not to suggest that the district court in this case condoned such activity by the government —to the contrary, it appears that the court accepted a plausible explanation the government made for its actions. I merely take this opportunity to reemphasize the importance of the principle outlined above.

I further note that we are not required in this decision to determine whether the government had an obligation to raise the conflict issue as a result of the government in the Southern District of New York having determined that Mazzara was supplying heroin to the Gambino family on the day in question.

**6.** *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), does not purport to alter this standard or the cases we relied upon in annunciating the standard. The Court, while deferential to the district court in that case, was equally deferential to the appeals court decision on review. The Court stated: "the regional Courts of Appeal are in a far better position than we are to conduct appellate review of these heavily fact-based rulings." *Id.* at 3121.

It should also be noted that the Court in *Burger* made its deferential comments in the context of examining the competence of an at-

torney in the course of its conflict of issue determination. The question was whether or not "a lawyer has performed his or her solemn duties in such a case at or above the lower boundary of professional competence." *Id.* 107 S.Ct. at 3121. Competence issues have traditionally been subject to a very deferential standard by the Supreme Court. *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S.Ct. 2052, 2065-66, 80 L.Ed.2d 674 (1984). Conflict of interest claims as a whole, on the other hand, are governed by a nondeferential standard. *Id.* at 692, 104 S.Ct. at 2067.

In any case the Court in *Burger* was not faced with the strong direct evidence of an actual conflict of interest presented in this case.

**7.** The determinations of pure fact made by the district court to support its assertion that there was no conflict of interest in this case are due deference by us. However the determination that there was indeed a conflict of interest is *not* a fact determination and may be freely reviewed by us. Nor need we defer to vague conclusions of the district court, unsupported by facts, that Evseroff's affidavit was the result of underlying forces.

actions are based on inaction and are passive, as is charged here.

Opinion of the Court at 1070. Efforts by counsel which are foresworn due to a conflict are, of course, often harder to demonstrate than improper efforts undertaken. This is precisely why the presumption of prejudice to the defendant exists. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 ("it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests"). In fact, the essence of a conflict of interest violation is usually the very inaction and passivity it inspires. "[I]n a case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to *refrain* from doing." *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978) (emphasis in original). The Supreme Court has recently remarked that "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." *Wheat v. United States,* — U.S. —, —, —, 108 S.Ct. 1692, 1697, 100 L.Ed. 2d 140 (1988) (emphasis added) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978)).

Conflict of interest cases tend, therefore, to have us inquire into sins of omission rather than sins of commission. The truth that inaction is the essence of a conflict of interest problem is born out in the case before us. Evseroff, because of a perceived conflict of interest, refrained from following up in any fashion whatsoever on the Mazzara defense possibility.

Throughout Judge Greenberg's opinion he limits his analysis of Gambino's claim to Evseroff's failure to cross-examine the government's surveillance witnesses. While this contention was certainly important, an even more important omission raised by Gambino is the admitted lack of *follow up* by Evseroff.

### B.

Judge Greenberg also writes that Evseroff could not have an actual conflict of interest because nothing "which Evseroff could have done at trial on behalf of appellant but omitted to do could have prejudiced Mazzara," since Mazzara was not a defendant at the same trial. Judge Greenberg is "unable to conceive of how Mazzara would have been prejudiced if Evseroff had used evidence in the government's possession regarding Mazzara to identify Mazzara as the source of the drugs." Yet testimony concerning Mazzara as the source of the heroin *could* have hurt Mazzara at his trial. The government's evidence in the logs was not the only source of prejudice to Mazzara that Evseroff would consider in his decision not to present a Mazzara defense. If Evseroff had presented a full-fledged Mazzara defense, he might have called witnesses who would provide testimony which might incriminate Mazzara. This testimony, if inconsistent, might later be used to impeach those witnesses when testifying against Mazzara in the *Badelemanti* case. *See* Fed.R.Evid. 801(d)(1). If Evseroff uncovered new evidence or witnesses to support an argument that Mazzara was the source of the heroin, and presented the witnesses and evidence at Gambino's trial, he could have provided further ammunition for the government to use against Mazzara in the *Badelemanti* case. The effort to present Mazzara as the source of heroin would obviously undermine Evseroff's relationship with Mazzara. It goes without saying that most clients would not appreciate their attorney naming them as heroin sources. Additionally, if Evseroff produced sufficient evidence on the subject, it might have led to further charges against Mazzara. Yet Judge Greenberg reaches the remarkable conclusion that "from an objective viewpoint it was a matter of indifference to Mazzara if Evseroff had advanced him as the source of the heroin" at Gambino's trial.

Even if this were the case—and it clearly was not—it is not Mazzara's perspective which is important. It is the state of mind of Evseroff which is of crucial importance. If Evseroff labored under the weight of a feeling of loyalty to Mazzara which Evseroff *perceived* was at odds with his repre-

sentation of Gambino, he suffered from a conflict. He could not perform as an unhampered zealous advocate. This is so whether or not he had reason to have this perception. Similarly, Evseroff would have a conflict whether or not Mazzara perceived one if he perceived that he would lose the fee from his representation of Mazzara, a not unrealistic possibility if he attempted to present Mazzara, charged with heroin distribution, as, in fact, the source of the heroin in question.

The question in conflict of interest cases is whether there has been a "struggle to serve two masters." *See Holloway,* 435 U.S. at 482, 98 S.Ct. at 1177; *Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1718–19. One "master" will always be the client seeking relief. The other master may be another client, but it may also be the financial interest of counsel or some other interest.

Indeed a conflict may arise not only in a multiple representation case as we have before us, but also where there is only one party being represented. *See, e.g., Wood v. Georgia,* 450 U.S. 261, 272, 101 S.Ct. 1097, 1103–04, 67 L.Ed.2d 220 (1981) (potential conflict when "adult" entertainment distributor directly employed and paid defense attorney representing its former employees); *Briguglio v. United States,* 675 F.2d 81, 82–83 (3d Cir.1982) (per curiam) (remanding for evidentiary hearing when defendant unaware until after verdict that counsel was under criminal investigation and that prosecutor's office refused to discuss plea because of potential invalidation); *United States v. Barnes,* 662 F.2d 777, 782 (D.C.Cir.1980) (remanding for evidentiary hearing when representation at habeas hearing by counsel alleged to have rendered ineffective assistance on appeal would constitute conflict of interest between attorney and defendant); *United States v. Taylor,* 657 F.2d 92, 94 (6th Cir.) (per curiam) (remanding for inquiry to determine whether defendant's attorneys, under investigation for possession of documents taken from United States Attorney's office, could forcefully pursue client's defense without incriminating themselves further), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981). *United States v. Marrera,* 768 F.2d 201, 207 (7th Cir.1985) (potential conflict when counsel entered into arrangement with defendant to share proceeds from sale of movie rights of defendant's case), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 321 (1986); *United States v. Hearst,* 638 F.2d 1190, 1193 (9th Cir.) (potential conflict in counsel's book contract concerning Patty Hearst trial), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1980).

Judge Greenberg apparently views a conflict of interest as being only a conflict between two clients; while it may result from this situation, it is essentially a tension, a friction, a dissonance, *within* the attorney which does not permit the attorney's single-hearted zealous advocacy on the part of a particular client. The circumstances surrounding the representation provide the evidence of the conflict. This conflict may occur even where there is no conflict between current clients. *See, e.g., Wood v. Georgia,* 450 U.S. 261, 272, 101 S.Ct. 1097, 1103–04, 67 L.Ed.2d 220 (1981); *Davis v. Stamler,* 650 F.2d 477, 480 (3d Cir.1981) (requiring disqualification when attorney who represented ex-president of corporation on charge of converting corporate assets had previously represented corporation, acted as interim president, and was potential prosecution witness); *Briguglio v. United States,* 675 F.2d 81, 82–83 (3d Cir.1982) (per curiam); *United States v. Barnes,* 662 F.2d 777, 782 (D.C.Cir.1980); *United States v. Taylor,* 657 F.2d 92, 94 (6th Cir.) (per curiam), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Marrera,* 768 F.2d 201, 207 (7th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 321 (1986); *United States v. Hearst,* 638 F.2d 1190, 1193 (9th Cir.), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

### IV.

I turn now to a concern which I feel underlies this and many other multiple-representation drug cases which engulf our courts. There is a need to formulate a prophylactic rule to govern situations such as those presented to us here. The rule I

propose is required by the sixth amendment and frankly, would serve to prevent the waste in time and money which the nondisclosure of potential conflicts engenders by way of satellite litigation and appeal.

While the prophylactic rule suggested is not necessary to the resolution of this case, and while my thoughts on the proposed rule are not etched in stone, I believe that, if adopted, such a rule would safeguard the sixth amendment rights of defendants and encourage counsel to be more forthcoming about potential conflicts of interest so that the issues can be resolved when resolution is easiest—in the course of the trial—rather than on appeal.

I begin with the lawyer's duty to his client. The duty of loyalty to a client is " 'perhaps the most basic' responsibility of counsel and 'it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests.' " *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. A lawyer's duty "runs hard and straight to the client." Penegar, *The Five Pillars of Professionalism*, 49 U.Pitt.L. Rev. 307, 322 (1988). "A lawyer should exercise independent professional judgment on behalf of a client." Model Code of Professional Conduct Canon 5.[8] Indeed, the first ethical consideration under Canon 5 declares:

> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interest, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

*Id.* EC 5–1 (footnote omitted). The duty of loyalty is implicated where he or she represents two or more clients whose affairs somehow intersect. "This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be *conflicting, inconsistent, diverse, or otherwise discordant.*" *Id.* EC 5–14 (emphasis added). Even where there are merely "potentially differing interests," the lawyer "should resolve all doubts against the propriety of representation. A lawyer should never represent in litigation multiple clients with differing interests." *Id.* EC 5–15.

Where multiple representation is permitted it should only be undertaken with the fully informed approval of the client. Ethical Canon 5–16 of the Model Code of Professional Responsibility states:

> "In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus, before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent."

During the course of a trial counsel who recognizes a potential conflict has a duty to inform not only his other client but the court as well. In *Cuyler* the Supreme Court noted that: "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. . . . [T]rial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel." 446 U.S. at 346–47, 100 S.Ct. at 1717 (footnote omitted). The Court explained that defense counsel " 'is in the best position professionally and ethically to determine when conflict of interest exists or will probably develop in the course of a trial.' " *Id.* at 347, 100 S.Ct. at 1717 (quoting *Holloway v. Arkansas*, 435 U.S. at 485,

---

**8.** The ethical guidelines discussed here are taken from the ABA Model Code of Professional Responsibility. In August, 1983 the ABA replaced the entire Model Code with the Model Rules of Professional Conduct. The ethics rules of the majority of states, however, are still patterned after the Model Code. The Model Rules contain ethical guidelines concerning conflicts of interest which, in general, parallel those in the Model Code discussed here. *See* ABA Model Rules of Professional Conduct Rule 1.7 and comment.

98 S.Ct. at 1179 and *State v. Davis*, 110 Ariz. 29, 31, 514 P.2d 1025 (1973)).

While the attorney has the burden to come forward with potential conflicts, we also must recognize that there are pressures upon defense counsel that countervail against the performance of this ethical responsibility. "Privately retained lawyers are subject to economic pressures and consequently cannot be relied on to alert clients to conflicts of interest." Lowenthal, *Joint Representation in Criminal Cases: A Critical Appraisal*, 64 Va.L.Rev. 939, 985 (1978).

A prophylactic rule is therefore necessary in order to assist and encourage absolute forthrightness on the part of counsel so that the client and the court may decide the close issues involving potential conflicts rather than leaving that responsibility to the attorney who may be tempted to breach his or her responsibility because he " 'hate[s] to give up a fee.' " *Id.* at 962, n. 69 (quoting public defender).

The rule I propose is distilled from the ethical considerations outlined above. The Supreme Court has recognized that "prevailing norms of practice as reflected in the American Bar Association standards and the like" may serve as guides in determining what is reasonable conduct by counsel in a sixth amendment analysis. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. These guides cannot be developed into a detailed set of rules for counsel's performance because of the limiting effect such rules would have on counsel's independence and ability to make tactical decisions during trial. *Id.* at 688–69, 104 S.Ct. at 2065. The Court, however, in the conflict of interest context has departed from the deferential reasonableness standard applied to general adequacy of representation cases. *Id.* at 692, 104 S.Ct. at 2067. The Court has created a rule that inadequate representation will be *presumed* where an actual conflict of interest adversely affects the performance of counsel. *Id.*

The Court has not comprehensively defined "actual conflict of interest." We may, therefore, turn to the ethical standards adopted by the American Bar Association, and outlined above, to guide our definition of this term.

We have previously held that, in a conflict of interest case, non-conformance with the rules of professional responsibility by an attorney representing a criminal defendant shall guide our examination of whether or not that defendant's sixth amendment rights were infringed. *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir.1978) ("we hold that when a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant"). Other courts have similarly found defense counsel's violation of, or compliance with, ABA and other ethical standards as a pertinent consideration in the resolution of sixth amendment conflict of interest claims. *See, e.g., United States v. Bernstein*, 533 F.2d 775 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *United States v. Jeffers*, 520 F.2d 1256 (7th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976); *In Re Rappaport*, 558 F.2d 87 (2d Cir.1977); *United States v. Siegner*, 498 F.Supp. 282 (E.D.Pa.1980); *United States v. Helton*, 471 F.Supp. 397 (S.D.N.Y., 1979); *United States v. Turkish*, 470 F.Supp. 903 (S.D.N.Y.1978); *United States v. RMI Co.*, 467 F.Supp. 915 (W.D.Pa.1979).

Using the guidance provided by the ethical rules outlined above, I would adopt a prophylactic rule which would require that, when, during the course of a trial, counsel becomes aware that he or she is subject to an interest which is "conflicting, inconsistent, diverse or otherwise discordant" with the interest of the client being tried, that attorney should, at the first opportunity, reveal this potential conflict to the client and the court. *See* Model Code of Professional Conduct EC 5–15. Failure to do so would result in a rebuttable presumption that an actual conflict existed. The client would retain the burden of proving adverse

effect on the client's representation. *See Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718.[9]

If such a rule inspires counsel to be more forthcoming in disclosing potential conflicts of interest to his client and the court, the benefits of the rule are great. A conflict of interest denies a defendant a fundamental constitutional right. A conflict of interest appeal results in, at a minimum, waste of appellate time which the taxpayers pay for, and, at worst, the retrial of a defendant whose first trial, with all of its attendant costs, could have resulted in a valid conviction. *See People v. Baker*, 268 Cal. App.2d 254, 260, 73 Cal.Rptr. 758, 763 (1968). The proper functioning of our adversarial system of criminal justice is dependent upon the zealous advocacy of client's interests by lawyers. Both individual clients and the criminal justice system suffer when advocacy is impaired by a conflict of interest.

Such a rule is subject to possible abuse. An unscrupulous defendant and counsel could conspire to create an undisclosed conflict of interest in the hope of winning a new trial should the defendant lose. The potential sanctions against the attorney, in the rarest of cases might not prevent such abuse. Such a scenario is, of course, possible even with the present definition of actual conflict of interest. In any case the benefits of the proposed rule far outweigh the costs which might result in the rarest of rare cases where an attorney conspires with a client to create a conflict of interest.

The application of the proposed rule to the present case would produce the same result as that produced by way of the traditional analysis undertaken previously. Under the proposed rule, since the government has been unable to rebut the presumption that Evseroff's potential conflict

resulted in an actual conflict of interest, and since the adverse effect on Gambino's representation, as discussed above, is clear to me, Gambino's sixth amendment rights were violated by a conflict of interest.

## V.

Because Evseroff suffered from an actual conflict of interest in his representation of Rosario Gambino and because that conflict adversely affected his performance on behalf of Gambino, I would reverse the judgment of the district court and remand for a new trial.

---

**9.** In *Cuyler* the Court stated:
Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.

446 U.S. at 348, 100 S.Ct. at 1718. Since ineffective assistance of counsel which requires *both* an actual conflict of interest *and* an adverse effect upon the lawyer's performance is not being presumed under the proposed rule, and since the Court in *Cuyler* was not speaking to the issue of the nondisclosure to the client or court of potential conflicts of interest, the above statement from *Cuyler* does not preclude the proposed prophylactic rule.